## MILLER et al. v. EXCHANGE NAT. BANK OF TULSA et al.

No. 27317.    March 1, 1938.

Rehearing Denied May 24, 1938.

Application for Leave to File Second Petition for Rehearing Denied June 14, 1938.

N. E. McNeill (Jack Langford, of counsel), for plaintiffs in error.

Jos. L. Hull, Chas. E. Bush, and Jas. E. Bush, for defendants in error.

CORN, J. This is an appeal from a judgment of the district court of Kay county. The Exchange National Bank of Tulsa, assignee of a note and mortgage executed by Alma M. England to the Albright Title & Trust Company, filed its action asking judgment for $50,000, attorney's fees and interest and foreclosure of a mortgage executed to secure payment of the note. Plaintiffs in error herein were given leave to intervene, and they filed separate petitions in intervention, asserting a vested, beneficial interest in this note by virtue of a trust agreement executed in their favor by their father. Hereafter we shall refer to the plaintiffs in error as "beneficiaries" and to the defendant in error as the "bank."

February 25, 1929, Zack T. Miller, as grantor, created a $50,000 trust fund for the interveners with the Albright Title & Trust Company as trustee. The articles of trust provided that the corpus of the trust was to be loaned to Alma M. England, secured by her note and mortgage on real estate in Ponca City. The interest, less trustee's fees, was to be paid for education and support of the interveners according to the provisions of the trust, for a period of ten years, unless terminated by grantor's death.

Article 6 of the trust provided:

"The grantor hereby reserves the privilege to revoke this agreement at any time, and may do so by giving thirty days' written notice to the trustee and by paying the trustee a revocation fee of twenty-five ($25) dollars, and the trustee shall thereupon deliver the trust property to the grantor."

The loan was completed and the interest paid the beneficiaries under the trust until February 6, 1931. A few weeks prior to this time, Z. T. Miller had entered into a tentative agreement with the bank, whereby the bank would sell him the notes of the Miller Bros. 101 Ranch and certain claims against the Geo. Miller estate, to be secured by the notes and claims, an assignment of his own life insurance policy and this note and mortgage for $50,000.

Upon meeting to consummate the deal, the bank's representative learned that Z. T. Miller had not obtained Mrs. England's note and mortgage from the trustee. Thereupon they called the Albright Title & Trust Company on the telephone and it was agreed that the written notice of revocation would be waived. The trustee then assigned the note and mortgage to the bank, and Miller's representative took them back to the ranch, at which time they were turned over to the bank's representative. Miller later executed two receipts to the trustee, acknowledging the trust to be at an end. Thereafter the bank collected the interest and credited it upon the note.

The beneficiaries claim that under the terms of the trust, Virginia Miller Flood is entitled to $1,600 and Zack Miller, Jr., to

$4,025.01. The trial court found that the evidence did not sustain the pleas of intervention, denied their petitions, rendered judgment upon the note and decreed that foreclosure and an order of sale of the mortgaged property issue. The real question here is whether the creator of a trust estate can revoke the trust in any manner, except by strict compliance in the manner and method provided in the trust agreement. The beneficiaries assign five grounds of error for reversal, which are presented under three propositions.

The question raised by the first proposition submitted is whether, upon execution of the trust, the beneficiaries became owners of a vested, beneficial interest in the trust estate. The beneficiaries cite authority and urge the point that when this trust was created, they then had a vested, beneficial interest in the trust estate, of which they could not be deprived. However, the cases cited are cases which involve a trust created by parol. Naturally in cases of this kind a beneficiary must necessarily consent to any alteration or revocation. Any action to enforce performance of a trust is against the trustee, since the theory of a trust is that the grantor passes all control over the trust res and nothing remains to be done on his part.

The beneficiaries cite Jones v. Clifton, 101 U. S. 225, 25 L. Ed 908, and Corliss v. Bowers, 30 Fed.2d 135, which case holds that the "creation of a revocable trust vests in beneficiary present estate in all respects valid until power of revocation is exercised." In the instant case a different situation prevails, and must necessarily be looked to in deciding this matter.

In the articles of trust the grantor expressly reserved the power of revocation, which he could exercise at any time he saw fit before the expiration of the ten-year term for which the trust was created. Up to this point the beneficiaries did have an interest; of this there can be no doubt. However, when the grantor saw fit to enforce his right of revocation, then that interest was removed from them, as though the trust had expired by the passage of the time for which it was created, or by death of the beneficiaries.

Section 11882, O. S. 1931, provides as follows:

"Where the grantor in any conveyance reserves to himself, for his own benefit, an absolute power of revocation, such grantor is still to be deemed the absolute owner of the estate conveyed, so far as the rights of creditors and purchasers are concerned."

By statute in this state the question has been settled that where the grantor in a conveyance reserves the absolute power of revocation for his own benefit, then he is still deemed to be the owner in so far as the rights of creditors and purchasers are concerned.

We are next confronted by the question of the construction to be placed upon the power of revocation expressly reserved by the grantor in article 6 of the trust articles. The second contention of the beneficiaries being based upon the claim that when a trust is created and the mode of revocation is specified, then the only effective revocation must be in the manner provided.

Article 6 of the articles of trust provided:

"The grantor hereby reserves the privilege to revoke this agreement at any time **and may do so** by giving thirty days' written notice to the trustee and by paying the trustee a revocation fee of twenty-five ($25) dollars, and the trustee shall thereupon deliver the trust property to the grantor."

We must decide as to the interpretation to be placed upon the words by which the grantor reserved this power of revocation. The beneficiaries contend that where a particular mode of revocation is specified in the power which is reserved, then this must be followed if the revocation is to effectively take away the vested interests of the beneficiaries.

Apparently this exact problem has never before been called to the attention of this court, since there seems to be a lack of authority upon the point. The beneficiaries, in their brief, have cited numerous cases from other jurisdictions, all holding that where a trust has once been created it can only be revoked in the manner provided.

The evidence disclosed that on February 6, 1931, the bank's representative called upon the grantor at the Miller ranch, relative to completing a deal based upon a tentative oral agreement, whereby Miller was to take up obligations of the Miller Bros. Ranch, giving his note in payment, a part of the security being the note and mortgage in question. Upon learning that Miller had not secured the note and mortgage constituting the corpus of the trust, the parties contacted the trustee, who then agreed to waive the provision calling for 30 days' written notice, in order to accommodate all concerned. Miller then had a letter written

to the trustee, which was taken to the trustee by Miller's agent, the letter stating that it was a receipt.

Obviously the provision as to 30 days' written notice was for the benefit of the trustee. It could not have been considered as being of any advantage to the beneficiaries. The grantor having reserved this power of revocation, it could not have mattered to them whether the trustee had one day's notice or 30 days' notice, so long as the grantor determined to exercise this power of revocation.

This provision being for the benefit of the trustee, there is no ground for saying that the waiver of the requirement by the trustee was open to attack by the beneficiaries. Although the grantor could not have forced the trustee to waive the provision requiring notice, we hold that when the trustee voluntarily waived the requirement, the action is not open to attack on the part of the beneficiaries.

In Words and Phrases (First Series) vol. 5, p. 4420, is found the following:

"'May,' as used in a statute, means 'must' or 'shall' in those cases only where the public are interested, and the public or third persons have a claim de jure to have the power exercised; but, when used in a private trust, it is optional with the trustees whether the act will be done." Citing Newburgh & C. Turnpike Road Co. v. Miller (N. Y.) 5 Johns. Ch. 101.

The beneficiaries' third contention is that when a trustee accepts a trust, he cannot, by assigning the trust property, discharge himself from his duties as trustee. This is a proper statement of the law, but does not fit the case at bar, because the trustee did not make an assignment of trust property in which the beneficiaries had an interest. When the grantor directed the letter to the trustee to revoke the trust, and the trustee agreed to waive the written notice, the trust was then at an end.

Careful consideration of the entire matter leads us to the conclusion that the trust in question was properly revoked and that thereafter the beneficiaries had no interest in the trust res and that the judgment of the trial court denying their pleas in intervention was entirely correct.

Judgment affirmed.

OSBORN, C. J., and PHELPS, GIBSON, and DAVISON, JJ., concur.