966 P.2d 810 (1998)
1998 OK CIV APP 144
In the Matter of the Bonny Dawn EDWARDS IRREVOCABLE TRUST.
Bonny Dawn Edwards CURTIS, Appellant,
v.
AMQUEST BANK, N.A., and John Mackey, as Guardian Ad Litem of Joshua Aaron Dankirk, a minor child, Appellees.
No. 89263.
Court of Civil Appeals of Oklahoma, Division No. 3.
September 15, 1998.
Sheldon B. Swan, Clell I. Cunningham III, Oklahoma City, Oklahoma, For Appellant,
Henry C. Bonney, John E. Campbell, Jr., Bonney, Weaver, Corley & Benefield, Duncan, Oklahoma, For Appellee AmQuest Bank, N.A.
Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 3.

*812 OPINION
ADAMS, Judge:
¶ 1 Bonny Curtis (Appellant) appeals a trial court order denying her petition to terminate her irrevocable trust, approving the accounting by the current trustee, Amquest Bank, N.A. (Trustee), and ordering that the payment of legal services incurred by Trustee and the guardian ad litem be paid by the trust. For reversal, Appellant alleges five trial court errors in her brief in chief: (1) failing to allow reformation of the trust by mutual consent of the trustor and all beneficiaries; (2) finding that she waived her attorney-client privilege; (3) applying the wrong standard in approving payment of Trustee's fees and costs from the trust; (4) failing to address certain facts applicable to her in its rulings; and (5) appointing a non-relative as guardian ad litem.[1]
¶ 2 The subject of trusts and the control of trust estates is one of equitable cognizance. Peyton v. McCaslin, 1966 OK 4, 417 P.2d 316. On appeal in a case of equitable cognizance, we will examine the record and weigh the evidence. In such cases, a presumption of correctness exists in favor of the trial court's findings. Unless it is clearly against the weight of the evidence or contrary to law, the trial court's decision will be affirmed. Story v. Hefner, 1975 OK 115, 540 P.2d 562. With this in mind, we review the undisputed facts.

FACTS
¶ 3 Upon receipt of a significant inheritance during her first marriage, Appellant established the Bonny Dawn Edwards Trust (the trust), funding it with part of that inheritance and appointing, as trustee, another bank who subsequently merged with Trustee. The express terms of the trust, in pertinent part, provide that (1) the trust may not be revoked during Appellant's lifetime, i.e., it is irrevocable; (2) the trust is created for "the benefit of Trustor [Appellant] during her life time and after her death for the benefit of her son, Joshua Aaron Dankirk"; (3) Appellant is to receive the income produced by the principal until her death. If Joshua is under 25 years of age at her death, then the Joshua Aaron Dankirk Trust will be created and the trust income will be distributed to Joshua until he reaches 25 years of age, when the balance of the trust will be distributed to him; (4) the interest of the beneficiaries in the income or principal of the trusts shall not be subject to voluntary or involuntary alienation by a beneficiary;[2] and (5) the trust may not be amended except to add as a beneficiary any other child born to Appellant.
¶ 4 After Trustee declined Appellant's requests to invade the trust principal for the support of her family, Appellant filed a petition for an order terminating the trust on November 10, 1995, alleging, inter alia, that it was in the best interest of the trust estate and its beneficiaries to do so. Trustee contested *813 the petition, arguing, inter alia, that the trust is a spendthrift trust for the benefit of both Appellant and Joshua which could not be revoked, and moved immediately for appointment of a guardian ad litem for Joshua. Appellant argued no guardian ad litem was necessary but suggested alternatively that the trial court appoint either Appellant and her husband (Joshua's adopted father) or Joshua's aunt to represent Joshua's interest. The trial court appointed an attorney, Appellee John Mackey, who later filed an answer agreeing to the revocation of the trust.
¶ 5 At trial, only Appellant testified. In the form of a stipulation, Mackey amended his answer in open court indicating his agreement for reformation of the trust to allow Trustee to invade the trust principal for medical purposes for Appellant, Joshua and Appellant's daughter from her marriage to her present husband. However, Mackey withdrew his previous agreement to revoke the trust. Trustee then offered, and the trial court admitted without objection, Exhibit No. 2, which includes the trust document plus Trustee's accounting since the inception of the trust, and Exhibit No. 3, Trustee's summary of fees. Trustee also announced the parties' stipulations: (1) Mr. Brown, a local attorney for numerous years, would testify that Trustee's attorney fees were reasonable, and (2) that Mackey will submit an invoice for his services that could be paid out of the trust assets.
¶ 6 After taking the matter under advisement, the trial court entered its Findings of Facts, Conclusions of Law and Judgment denying reformation of the trust, approving Trustee's accounting and its payment of attorney fees from the trust, and finding Mackey's legal services were reasonable and ordering payment from the trust. Appellant then filed this appeal.[3]

ANALYSIS
¶ 7 There is no dispute with the trial court's conclusions that the trust is an irrevocable, spendthrift trust by its express terms. However, Appellant alleges in her first proposition of error that the trial court's decision against reformation is contrary to the statute which provides that irrevocable trusts may be revoked under certain conditions, 60 O.S.1991 § 175.41  an original section of the Oklahoma Trust Act, 60 O.S.1991 § 175.1, et seq. (the Trust Act), adopted by the Legislature in 1941.
¶ 8 Section 175.41, entitled "Revocation of trust by trustor," provides that:
Every trust shall be revocable by the trustor, unless expressly made irrevocable by the terms of the instrument creating the same. Provided, that any trust may be revoked by the trustor upon the written consent of all living persons having vested or contingent interest therein. The term "contingent interest," as used in this Section, shall include an interest which a beneficiary may take by purchase, and exclude any interest which a beneficiary may take by descent. Provided further that this Section shall not apply to a spendthrift trust unless same is created by the trustor for his own benefit. (Emphasis added).
¶ 9 The trial court concluded, based primarily on its interpretation of § 175.41, that "[a]n irrevocable spendthrift trust that is not solely for the benefit of the trustor cannot be revoked by the trustor regardless of whether or not all beneficiaries consent to the revocation." (Emphasis added). Because the trial court also concluded the trust was created for the benefit of both Appellant and Joshua, the trust could not meet that standard and could not be revoked or modified. The trial court read the statutory phrase "for his own benefit" in the last sentence of § 175.41 to mean "solely for his own benefit," i.e., trustor creates a trust of which he is the sole beneficiary. Appellant, however, contends that same phrase means "for his own interest," i.e., the trust is created in part for Trustor and in part for other beneficiaries, as in this case where Appellant is the income beneficiary and Joshua is the contingent beneficiary. Therefore, the issue is the interpretation of § 175.41.
*814 ¶ 10 Statutory interpretation is a question of law. Oklahoma Employment Security Commission v. Oklahoma Merit Protection Commission, 1995 OK CIV APP 76, 900 P.2d 470. The primary goal of statutory construction is to ascertain legislative intent, and that intent is ascertained from the whole act in light of the general purpose and objective. City of Bethany v. Public Employees Relations Board of the State of Oklahoma, 1995 OK 99, 904 P.2d 604. If the language is plain and clearly expresses legislative will, such language will be followed without further inquiry. State ex rel. Department of Public Safety v. 1985 GMC Pickup, 1995 OK 75, 898 P.2d 1280. In the absence of a contrary definition of the common words used in a legislative act, we must assume that the Legislature intended for them to have the same meaning as that attributed to them in ordinary and usual parlance. Gilbert Central Corporation v. State, 1986 OK 6, 716 P.2d 654. We must consider the statute as a whole, not just individual provisions. Keck v. Oklahoma Tax Commission, 188 Okl. 257, 108 P.2d 162 (1940). In determining the meaning of an unambiguous statute, the ordinary rules of grammar must be applied unless they lead to an absurd result. Gilbert Central Corporation v. State, 1986 OK 6, 716 P.2d 654.
¶ 11 Neither of the parties contend § 175.41 is ambiguous. Nor is the prepositional phrase "for his own benefit" defined by the Trust Act. When the word "own" follows a possessive pronoun, in this case "his," it means "belonging to him" and is usually used in that way to emphasize or intensify the idea of exclusive ownership. Webster Third New International Dictionary, 1986. "Benefit" means "advantage, profit, or interest." (Emphasis added). Black's Law Dictionary, 6th Edition. However, our analysis may not stop here.
¶ 12 Where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout. Where its meaning in one instance is clear, this meaning will be attached elsewhere unless it clearly appears from the whole statute that it was the legislative intention to use it in a different sense. Walton v. Donnelly, 83 Okl. 233, 201 P. 367 (1921). When the Legislature adopted the section of the Trust Act that authorizes spendthrift trusts, 60 O.S.1991 § 175.25, it clearly intended to allow a trustor to protect the trust assets from the imprudent behavior of the trustor's beneficiary or beneficiaries by preventing the transfer to third parties and by protecting the assets from creditors. However, in the same section which authorizes such a trust, the Legislature also included a subsection, 60 O.S.1991 § 175.25(G), which provides that "[n]othing in this act shall authorize a person to create a spendthrift trust or other inalienable interest for his own benefit. The interest of the trustor as a beneficiary of any trust shall be freely alienable and subject to the claims of his creditors." (Emphasis added).[4]
¶ 13 In interpreting the phrase "for his own benefit," we must give it some meaning which fulfills the Legislative purpose in both instances in which it was used. If we adopt the interpretation urged by Trustee and adopted by the trial court, § 175.25 must be read as forbidding the creation of any trust in which the trustor is the sole beneficiary. Applying that same definition to § 175.41, we would be forced to conclude that the Legislature intended to allow that section to be used to revoke a trust which it declared void and illegal in the same act. In our opinion, not only does Trustee's interpretation add a word not included by the Legislature, but it also leads to an absurdity by suggesting the Legislature granted the power to revoke a trust which could never be formed under Oklahoma law. The Legislature will not be presumed to have intended an absurd result and statutory construction which would lead to such will be avoided if this can be done without violating legislative intent. Johnson v. Johnson, 1983 OK 117, 674 P.2d 539. Appellant's interpretation of § 175.41 is the preferred interpretation of that section, and we hold the trial court erred in not applying § 175.41 to Appellant's request to modify the trust.
*815 ¶ 14 Moreover, the fact that Appellant and Mackey ultimately agreed not to revoke the trust but to modify it does not make § 175.41 any less applicable. Morrison v. Ardmore Industrial Development Corporation, 1968 OK 116, ¶ 9, 444 P.2d 816, 820, concluded:
Since an alteration, amendment, revision, or modification of a provision of an instrument creating a trust, in effect, revokes a portion of the trust, we hold that any trust which may be revoked entirely in the manner provided in 60 O.S.1961, § 175.41 may be altered, amended, revised, modified, revoked, or terminated, in part, in the same manner.
¶ 15 The trust in question was created for Appellant's own benefit as that phrase is used in § 175.41. Appellant, the trustor, and the only other beneficiary, by and through his duly appointed guardian ad litem, agreed to modify the trust. The trial court should have applied § 175.41 and entered an order modifying the trust as outlined by those parties.
¶ 16 Our conclusion that the trust should have been modified renders immaterial other arguments by Appellant concerning admission of evidence relating to the modification,[5] the application of common law trust rules, and the choice of a guardian ad litem. However, we must still address Appellant's arguments concerning Trustee's accounting and the payment of attorney fees.
¶ 17 Appellant's objections to Trustee's accounting are all based on the fee which it paid, without prior court approval, to its attorneys in this case. However, Appellant concedes that under proper circumstances a trustee may employ counsel in order to fulfill its responsibilities and with court approval use trust assets to pay counsel. The trial court has approved the amount of the fees paid in this case. If that approval was appropriate, Appellant has not demonstrated how the trust estate has been damaged by the payment of those fees prior to court approval. Accordingly, we turn to Appellant's contention that no fee should have been paid in this case.
¶ 18 In this connection, Appellant argues that Trustee should have remained neutral in this litigation, at least once the guardian ad litem had been appointed and had agreed to modification. We disagree. Given the unsettled state of the law with regard to whether a trust such as this was covered by § 175.41 and whether the common law rule survived the adoption of that section, Trustee acted in good faith to preserve the trust and was entitled to employ counsel for that purpose and pay them from the trust estate. See First National Bank of Wichita Falls v. Stricklin, 1959 OK 208, 347 P.2d 652.
¶ 19 Finally, Appellant argues the fee allowed was not reasonable. We disagree with Trustee's argument that Appellant has waived this argument because she stipulated that an expert would testify that the fee charged was reasonable. Her stipulation establishes no more than would have been established if the expert had appeared and testified. If, based on all of the evidence including the stipulated expert testimony, Appellant can demonstrate that the trial court abused its discretion in setting the fee, we may reverse. Otherwise, we must affirm. See Green Bay Packaging, Inc. v. Preferred Packaging, Inc., 1996 OK 121, 932 P.2d 1091.
¶ 20 At the time it made its decision, the trial court had undisputed evidence concerning the reasonableness of the fee paid by Trustee. According to the record, Appellant's attorneys expended time justifying a $30,000 fee.[6] Under the circumstances, Appellant *816 has not demonstrated an abuse of discretion.

CONCLUSION
¶ 21 The trial court's order denying Appellant's request to modify the trust is reversed, and the case is remanded for entry of an order in accordance with the agreement between Appellant and Mackey. The trial court's award of attorney fees is affirmed.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED
HANSEN, J., and BUETTNER, P.J., concur.
NOTES
[1] Appellant's petition in error listed 18 allegations of error. Those issues not addressed in her brief in chief are deemed to have been waived. Anderson v. Dyco Petroleum Corporation, 1989 OK 132, 782 P.2d 1367.
[2] Pursuant to 60 O.S.1991 § 175.25, any instrument creating a trust may provide by specific words that the interest of any beneficiary in the income of the trust shall not be subject to voluntary or involuntary alienation by such beneficiary. The right of any beneficiary of a trust to receive the principal of the trust or any part of it, presently or in the future, shall not be alienable and shall not be subject to the claims of his creditors. 60 O.S.1991 § 175.25(D). Any trust in which the interest of the beneficiary is subject to restraints on alienation, as provided by the Oklahoma Trust Act, 60 O.S.1991 § 175.1, et seq., may be called a "spendthrift trust." 60 O.S.1991 § 175.25(F).
[3] Mackey waived his right to file a brief pursuant to Rule 1.10(a)(5) of the Oklahoma Supreme Court Rules.
[4] Since renumbered as 60 O.S.Supp.1994 § 175.25(H).
[5] Including, at least for purposes of this case, Appellant's contention that the attorney who drafted the trust should not have been allowed to testify about what she told him her purpose was in creating the trust.
[6] According to Appellant's counsel, all of those hours "were for the benefit of reformation of the trust and reasonable and necessary under the circumstances of this case. However, in the interest of preserving the trust estate for the benefit of Bonny and Joshua, we request that the court approve only $7,500 in attorney's fees." Appellant cites this reduced fee request as evidence that Trustee's expenses were too high. The fact that Appellant apparently chose to bear a larger burden of her attorney's fees than might have otherwise been required does not detract from the evidence that the legal expenses of Trustee were reasonable. Her fee request, showing that her attorneys had actually earned a larger fee than that charged by Trustee's attorneys, actually supports the trial court's attorney fee decision.