2000 OK CIV APP 117

**In the Matter of the ESTATE OF David L. BELL, deceased,**

**Carter Bell and John Turner, Trustee for Carter Bell, Appellants/Counter-Appellees,**

v.

**Randy Olmstead, as Personal Representative for the Estate of David L. Bell, deceased, Appellee/Counter–Appellant.**

No. 92,445.[1]

Court of Civil Appeals of Oklahoma, Division No. 1.

May 19, 2000.

Certiorari Denied Oct. 10, 2000.

---

1. After this appeal was filed, Randy Olmstead filed an appeal, No. 93,223, which was consolidated with this appeal under this surviving num- ber by order of the Oklahoma Supreme Court. We treat No. 93,223 as a counter-appeal.

Richard A. Shallcross, Brewster, Shallcross & De Angelis, Tulsa, OK, for Appellants/Counter–Appellees.

William E. Farrior, Barrow Gaddis Griffith & Grimm, Tulsa, OK, for Appellee/Counter–Appellant.

## OPINION

ADAMS, Judge:

¶1 Randy Olmstead was a neighbor and friend of David and Barbara Bell and was in their home shortly after Barbara shot David in January of 1993. David Bell did not survive, and Barbara was eventually arrested and charged with murder. During the next six years, Olmstead was deeply involved in trying to help the family, which included the Bells' two children-Erin, who was a minor at that time, and Carter. David's will was filed for probate, and the court appointed Olmstead as special administrator. Later that year, the court appointed him as Personal Representative of the estate, and Olmstead received a fee of $75,000 for his services as special administrator. Because of the circumstances of David's death, the atmosphere was quite contentious, and Olmstead came into some criticism because of his relationship with the Bells.

¶ 2 Eventually, Barbara, Carter, and Erin reached an agreement concerning how the assets which passed upon David's death, only a small portion of which were technically assets of the estate, would be divided. Under that agreement, Carter and Erin agreed to pay equally the estate and gift taxes to the extent the estate assets were not sufficient to pay them. The taxing authorities demanded more tax than the initial return indicated, and based, at least in part, on Olmstead's recommendation, the estate paid the additional tax and commenced a legal action for refund, challenging the taxing authorities' view. In order to do so, Carter and Erin each furnished $400,000 from their funds because the estate had insufficient assets to pay the entire amount of additional tax. The refund claim was settled in the estate's favor, and the taxing authorities refunded approximately $770,000, including interest.

¶ 3 Olmstead filed his final accounting and petition for approval of fees. Carter filed an objection to the final account specifically objecting to the amount of the personal representative's fee and attorney fees which had been requested. At the hearing on the final account, Carter withdrew his objection to the attorney fees. At that hearing, the trial court awarded Olmstead a personal representative fee of $127,029. Within thirty days of that order, Carter, along with his trustee, John Turner,[2] filed a motion requesting the trial court to reduce the amount of that fee. The trial court granted Carter's request, reducing Olmstead's fee to $48,145. The trial court also awarded Olmstead $5,000 in legal fees incurred by him in defending his first application for attorney fees and $18,000 for attorney fees for defending his request for the personal representative's fee. Erin took no position concerning any of these issues.

¶ 4 Carter's appeal involves the standard used by the trial court to set Olmstead's fee and the attorney fees awarded to Olmstead for his attorney's services in defending Carter's objection to Olmstead's personal representative fee and attorney fee request.

2. John Turner was the trustee of a testamentary trust for the use and benefit of Carter Bell created in David's will. Subsequent references to Carter include the trustee.

Olmstead's appeal raises questions concerning the trial court's order reducing Olmstead's fee in response to Carter's motion. This a case of equitable cognizance, and we must affirm the trial court's decision unless it is against the clear weight of the evidence or contrary to law. *Matter of Estate of Bartlett,* 1984 OK 9, 680 P.2d 369.

## CARTER'S APPEAL

### Personal Representative's Fee

¶ 5 According to David's will, "[a]ny Personal Representative shall be entitled to reasonable compensation for services in administering and distributing the Estate or trust property, and to reimbursement for expenses." Citing this provision, Carter contends the trial court erred in failing to base Olmstead's fee on what was "reasonable" under the circumstances rather than awarding Olmstead the statutory commission provided in 58 O.S.1991 § 527. According to § 527, the fee of the personal representative must be calculated in accordance with its provisions, "[w]hen no compensation is provided by the will, or the [personal representative] renounces all claim thereto."

¶ 6 Although Carter concedes that Olmstead announced on the day of trial concerning his fee that he renounced any claim to compensation under the will, he argues that this renunciation was ineffective because "it would seem ... that any 'renunciation' regarding the terms of the Personal Representative's service to the Estate must come at the beginning of his administration, and not at the end." Carter cites no authority to support this argument, and there is nothing in the statutory language which requires the renunciation contemplated by the statute to be made at the outset of the administration. We will not consider assignments of error which are not supported by authority. *Peters v. Golden Oil Co.,* 1979 OK 123, 600 P.2d 330. The trial court did not err in applying § 527 to determine Olmstead's fee.[3]

3. Having so concluded, we need not address Carter's argument that as part of establishing "reasonable compensation" Olmstead should have demonstrated the time spent on the administration by use of contemporaneous time

¶ 7 Even if the trial court was correct in applying § 527, according to Carter, it should not have exercised its discretion under § 527 to award an additional allowance, up to the amount of commissions otherwise allowed by § 527, for extraordinary services. The trial court heard evidence of the unique circumstances involved in this probate and the manner in which those circumstances increased the complexity of administering the estate and dealing with the individuals involved. Moreover, the record supports the trial court's conclusion that Olmstead was in large measure responsible for saving the estate and the heirs at least $770,000 in federal and state estate taxes which other experts had suggested they would be unable to avoid. The trial court's conclusion that Olmstead had performed extraordinary services is not against the clear weight of the evidence and will not be disturbed.

## Attorney Fees

¶ 8 The trial court approved Olmstead using $12,000 of estate assets to pay his attorneys for services rendered in connection with the dispute over his fee as the personal representative, and Carter argues this was improper. He contends that it was improper for the trial court to allow the estate to pay Olmstead's attorneys for "defending a bloated fiduciary fee application." [4]

¶ 9 As a general rule, personal representatives of an estate are entitled to reimbursement from the estate for the cost of employing an attorney, as they would be for other necessary expenses of administration. *Matter of Estate of Bartlett*, 1984 OK 9, ¶ 26, 680 P.2d at 379. This rule would not be abrogated simply because the heirs took a position opposite to that of the personal representative. *See, Matter of Edwards Irrevo-*

cable Trust, 1998 OK CIV APP 144, 966 P.2d 810.

¶ 10 Determining the appropriate compensation for the personal representative differs only slightly from determining the compensation for any other person engaged by the estate to perform services. Both actions are related to the administration of the estate and the preservation and care of the estate assets. Carter has furnished no authority that would require the trial court to disallow attorney fees solely because Olmstead was not successful in convincing the trial court to award all of the requested personal representative's fee, and it is apparent that the trial court did not consider Olmstead's request to be "bogus." The trial court specifically concluded that the issue upon which Olmstead eventually lost, *i.e.,* whether the tax funds furnished by Carter and Erin and the tax refund should be included in calculating the fee, was an issue upon which reasonable legal minds could differ. Nevertheless, the trial court reduced the requested attorney fee by a third. Carter has not demonstrated the trial court's decision was against the clear weight of the evidence.

¶ 11 Finally, Carter argues the trial court erred in approving an additional $5,000 attorney fee to be paid by the estate for Olmstead's attorney's services in defending against Carter's initial objection to the attorney fee request contained in Olmstead's final accounting and request for fees. According to Carter, there is no Oklahoma authority for "fees on fees" under these circumstances. The trial court based its conclusion on 12 O.S.1991 § 936, which allows the prevailing party to recover attorney fees as costs in actions to "recover . . . for labor or services." In both *Hamilton v. Telex Corporation*, 1981 OK 22, 625 P.2d 106, and *Robert L. Wheeler,*

records. We do note that Olmstead did testify generally concerning the amount of time he expended after his appointment as Personal Representative and testified extensively about the various duties and tasks he performed. Moreover, the trial court found that the fee it awarded was reasonable and appropriate to the work performed.

4. Olmstead requested a fee of approximately $127,000 based upon his contention that

$800,000 furnished by Carter and Erin from their funds to pay estate taxes and the refund of federal taxes ($770,000) should be included in making the percentage calculations under § 527. The trial court ultimately concluded those amounts should not be included and awarded Olmstead a fee of approximately $48,000. That decision by the trial court is the subject of Olmstead's appeal.

*Inc. v. Scott,* 1991 OK 95, 818 P.2d 475, the Court approved an award covering the attorney fees expended in establishing and collecting attorney fees. There is Oklahoma authority allowing the recovery of "fees on fees."

■ ¶ 12 Carter contends § 936 does not apply in the probate context. However, the application to recover attorney fees for the administration of the estate is essentially an action to recover for labor or services rendered by the attorneys. The attorney fees covered by the trial court award are only for those expended in preparing to defend against Carter's objection to the larger attorney fee request. Carter did not withdraw that objection until the date set for trial. We hold § 936 is appropriately applied to proceedings on an application for attorney fees made in a probate case on behalf of the estate's attorneys where one or more of the heirs has objected to the application.[5] The trial court did not err in awarding attorney fees for Olmstead's attorney's preparation to defend against Carter's objection to their initial attorney fee request.

## OLMSTEAD'S APPEAL

¶ 13 Olmstead contends the trial court erred in not including the $800,000 furnished by Carter and Erin to be used to pay estate taxes and the approximately $770,000 tax refund as property which was "ranked as assets" under § 527 in calculating his fee. According to § 527, the personal representative is to be allowed commissions computed in accordance with its provisions "upon the amount of the whole estate accounted for by him, excluding all property not ranked as assets."

■ ¶ 14 As we perceive Olmstead's argument, that additional $1,570,000 should be included because he was required to take charge of those funds and administer them, seeing to their proper application and safekeeping, and to account for them. However, by its plain language § 527 contemplates that there may be property for which the personal representative must account but which is not to be included in the base for calculating the § 527 commission, namely "all property not ranked as assets." In order to be included as part of the base for determining the § 527 commission, the property must not only be within the personal representative's accounting responsibility, it must also be part of the *probate* estate. Our task is to determine whether the trial court's implicit finding that the funds furnished by Carter and Erin and the estate tax refund were not properly "ranked as assets" of David's probate estate is against the clear weight of the evidence.

■ ¶ 15 According to the settlement agreement between Barbara, Carter and Erin, "[u]pon final determination of estate and gift tax liabilities, if any, such taxes shall be paid from the residuary estate, provided if said sums are not sufficient to satisfy said obligations, the same shall be paid equally by Erin and Carter." The trial court heard evidence that Carter and Erin provided Olmstead with $800,000 with which to pay the additional taxes demanded by the taxing authorities because the estate did not have sufficient funds to pay the demanded amount. Carter and Erin's payment did nothing to increase the amount of estate assets and only served to satisfy their obligation under the settlement agreement. Although the proper payment of estate taxes, including taxes attributable to property not part of the probate estate, was Olmstead's responsibility as the personal representative, the liability for those taxes to the extent they exceeded the funds in the probate estate was placed on Carter and Erin under the settlement agreement. In receiving the $800,000 from Carter and Erin and paying it over to the taxing authorities, Olmstead was merely the conduit in order to facilitate the refund claim. The trial court's conclusion that the funds furnished by Carter and Erin for the specific purpose of satisfying their obligation under the settlement agreement to pay the

5. When the application for additional attorneys fees covering the dispute over Olmstead's fee and Carter's initial objection to the attorney fees was filed, Olmstead suggested that Carter should bear the responsibility for those fees. However, Carter and Erin announced that they had reached an agreement on the impact of any attorney fee award on their respective shares of the estate assets.

estate taxes that the estate lacked funds to cover should not be "ranked as assets" for purposes of § 527 is not against the clear weight of the evidence.

¶ 16 Similarly, the refund belonged to Carter and Erin as well. It represented a reduction in their obligation under the settlement agreement. The size of the *probate* estate remained unchanged by the receipt of the refund. The trial court's conclusion that the refund should not be "ranked as assets" was not against the clear weight of the evidence.

## CONCLUSION

¶ 17 None of the parties to this appeal have demonstrated that the trial court orders questioned in this case were against the clear weight of the evidence or contrary to law. The orders of the trial court are affirmed.

AFFIRMED

HANSEN, P.J., dissents with separate opinion; CARL B. JONES, J., concurs.

HANSEN, Presiding Judge, concurring in part and dissenting in part:

¶ 1 This appeal arises from an unusual set of circumstances. Appellant, Randy Olmstead, personal representative for the estate of David Bell, was a neighbor and friend of David and Barbara Bell. When Olmstead filed his final accounting and petition for approval of fees, Heirs filed an objection to both. The trial court originally awarded Olmstead $127,029 but on Heirs' 12 O.S.1991 § 1031.1 motion to vacate it reduced the fee to $48,145. The trial court also awarded Olmstead $5,000 in legal fees incurred by him in defending his first application for attorney fees and $18,000 for attorney fees for defending his request for personal representative's fees. Olmstead's argument in his appeal is that the trial court erred in reducing the original award of his fees as personal representative. He is partially correct. Section 58 O.S.1991 § 527(A) provides:

When no compensation is provided by the will, or the executor renounces all claims thereto, he must be allowed commissions

upon the amount of the whole estate accounted for by him, excluding all property not ranked as assets,......[1]

¶ 2 Olmstead claims the value of the "whole estate accounted for by him" must include all funds handled by him in his administration of the estate. Originally the trial court had included in the estate $800,000 given the estate by the heirs to pay the estate tax liability *and* the $777,683 refund from the IRS. But on Heirs' motion to vacate, the trial court modified its award and disallowed both sums and this appeal resulted.

¶ 3 Problems arose with the IRS regarding marital deductions, primarily because of application of the slayer statute. The parties decided to enter into a settlement agreement with the estate rather than risk all or nothing depending upon the outcome of the criminal trial. The settlement agreement involved assets of over $7,000,000. Olmstead encouraged a settlement which would keep assets out of the taxable estate. He testified there were questions as to how much money would be in the estate. Under the slayer statute, if Barbara was convicted, she would not be entitled to any of the marital assets and they would all go to the estate. Also, if Mr. Bell's insurance proceeds, rather than going to Barbara, came into the estate, the estate tax liability would be around $2.6 million dollars. By entering into the settlement agreement, this $2.6 million dollars would be saved.

¶ 4 Recitation of the exact terms and distributions of the settlement agreement are not necessary for resolution of this appeal. The section of the agreement pertaining to the $800,000 payment by Carter and Turner to the estate reads as follows:

Upon final determination of estate and gift tax liabilities, if any, such taxes shall be paid from the residuary estate, provided if said sums are not sufficient to satisfy said obligation, the same shall be paid equally by Erin and Carter

¶ 5 Olmstead filed the estate tax returns claiming entitlement to the marital deduction based on the settlement agreement. The IRS and the Oklahoma Tax Commission did

---

1. The balance of § 527 sets out the percentages     allowed.

not allow the deduction. The IRS assessed estate taxes and interest. The OTC followed suit and assessed $180,000 in estate taxes. After much negotiation, the IRS allowed some of the deductions and disallowed others for a total tax liability of $940,532. In response to this assessment, Heirs transferred $800,000 directly into the estate to pay the federal estate tax liability and pursue a claim for a refund in the United States District Court.

¶ 6 Ultimately the IRS refunded $777,683 to the estate.

¶ 7 The only issue in Olmstead's appeal is whether the $800,000 and the $777,683 should be included in "the amount of the whole estate accounted for by (Olmstead)" as contemplated by § 527.

¶ 8 Although no Oklahoma decision directly addresses the issue, clearly money received by the estate, paid out, and then refunded to the estate may not be counted twice. The record reflects an undisputed estate accounting of $2,540,596 including the $800,000 paid in to the estate by the heirs. The $800,000 became a part of the estate and it was distributed as such rather than being treated as a loan and returned to Heirs outside of the estate corpus. An accounting is the personal representative's statement under oath of the amount of money received and spent. The personal representative has a statutory right to a commission on the whole estate accounted, excluding property not ranked as assets. That fee must be at least that mandated by § 527. *Matter of Estate of Heimbach,* 1993 OK CIV APP 16, 847 P.2d 824. The $800,000 became an asset of the estate. In my view, the trial court erred in not including the $800,000 as an asset when figuring the percentage Olmstead should receive as his fee. I therefore dissent to the majority's affirmance of the trial court's determination of Olmstead's fee for acting as personal representative of the estate.

¶ 9 I concur to that portion of the majority's decision affirming the balance of the trial court's judgment.