2005 OK CIV APP 85

Cynthia PAUL & Michael Paul, Plaintiffs,

v.

Tracy L. ARVIDSON & James T. Arvidson, Plaintiff Intervenors/Appellees,

v.

Maggie Stewart, Defendant/Appellant.

No. 100,014.

Court of Civil Appeals of Oklahoma, Division No. 1.

July 15, 2005.

Rehearing Denied Aug. 11, 2005.

Certiorari Denied Oct. 24, 2005.

Grant E. Cheadle, Cheadle & Associates, Inc., Tulsa, OK, for Plaintiff Intervenors/Appellees.

John A. Akey, Tulsa, OK, for Defendants/Appellants.

Opinion by BAY MITCHELL, Judge.

¶1 This appeal comes from a declaratory judgment where the trial court held that the real property known as 4535 E. 32nd Place in Tulsa, was the corpus of "The Thomas E. Stewart and Dorothy L. Stewart Revocable Trust Dated October 29, 1992" (Trust No. 1). The court held the surviving Grantor, Thomas Stewart, had not revoked this trust in writing and delivered to the Trustee, as required by the terms of that trust, when he created the "Thomas E. Stewart and Maggie Sue Stewart Revocable Living Trust Agreement Dated July 15th, 1999" (Trust No. 2),

or by deeding the subject property to Trust No. 2. The court held that because the subject property remained the corpus of Trust No. 1, Thomas could not convey title to the property as an individual. The trial court denied motions to vacate, reconsider and to clarify the judgment.

¶ 2 The subject of trusts is one of equitable cognizance, and the trial court's judgment will only be reversed if it is clearly contrary to the weight of the evidence or contrary to law. *Matter of Edwards Irrevocable Trust*, 1998 OK CIV APP 144, ¶ 2, 966 P.2d 810, 812. Further, we review the denial of a new trial only to determine if the trial court abused it discretion or applied an incorrect legal standard. *Jones, Givens, Gotcher & Bogan, P.C. v. Berger*, 2002 OK 31, ¶ 5, 46 P.3d 698, 701. However, even though a trial court is vested with wide discretion in denying a new trial, we must reverse if the trial court erred regarding a pure question of law. *Id.*

¶ 3 Here, we hold the court erred as a matter of law when it found Thomas, who was the sole Grantor and Trustee under Trust No. 1, was required to deliver formal written notice of revocation to himself. We hold Thomas successfully revoked Trust No. 1 as to the subject property by establishing Trust No. 2, in which he intended to include all his property, and by deeding the subject property to Trust No. 2.

¶ 4 This lawsuit began as a breach of contract and specific performance action by Plaintiffs Cynthia and Michael Paul, who filed suit against Maggie and Thomas Stewart to enforce the sale of the subject property. They settled when Maggie agreed to sell the property. However, before the sales price could be paid to Maggie, Tracy and James Arvidson intervened, claiming they should be paid the sales price because the property sold was the corpus of Trust No. 1 of which they were beneficiaries. They noted Thomas and his first wife, Dorothy Stewart, had established a revocable inter vivos trust in 1992 (Trust No. 1) that was funded by the subject property, along with certain stocks, savings accounts and household contents. Thomas and Dorothy had executed a Quitclaim Deed to "... *Thomas E. Stewart*

*and Dorothy L. Stewart, Trustees of the Thomas E. Stewart and Dorothy L. Stewart Revocable Trust dated October 29th, 1992 ...*"

¶ 5 Trust No. 1 included a reservation of the right by the Grantors to revoke or modify the trust in whole or in part, or change the beneficiaries without notice or consent to any person, other than by written notice delivered to the Trustees. The only Trustees were Thomas and Dorothy Stewart. *After Dorothy died in November of 1998, Thomas was the sole surviving Trustee and Grantor for Trust No. 1.* James and Tracy Arvidson, who were Thomas' step-grandchildren, were beneficiaries of Trust No. 1. After Dorothy's death, Thomas amended Trust No. 1 on December 17, 1998 so that after specific bequests were made, Maggie would inherit half of the Trust benefits, and the other half would be split between James Arvidson, Tracy Arvidson and Barbara Jean Chatham, who was Thomas' daughter. The amended trust is referred to as Trust No. 1–A.

¶ 6 Approximately six months later on June 3, 1999, Thomas married Maggie. Then, on July. 15, 1999, Thomas and Maggie Stewart executed Trust No. 2. Maggie and Thomas were co-trustees, and the surviving spouse was the main beneficiary, with Tracy Arvidson and James Arvidson each receiving only one dollar. Trust No. 2 declared that it held "all real and personal property herein as evidenced by the attached Schedule 'A' annexed hereto." However, Trust No. 2 did not include Schedule A. The Trust also stated the following: "It is our express desire and intent to transfer *all of our property* into this said Trust established hereby, *whether listed on the attached Schedule A or not,* including property for which no documents of title are in existence or otherwise normally utilized for said property (*i.e.,* personal effects, etc.)." (Emphasis added). Trust No. 2 did not contain any provisions specifically revoking Trust No. 1 or Trust No. 1–A.

¶ 7 Subsequently, on August 5, 1999, Thomas and Maggie executed a General Warranty Deed, intending to convey the subject property into Trust No. 2. The deed was "*between Thomas E. Stewart and Maggie Sue Stewart, husband and wife, ... and*

*Thomas E. Stewart and Maggie Sue Stewart, as Independent Co-trustees of the Thomas E. Stewart and Maggie Sue Stewart Revocable Living Trust dated the 15th day of July, 1999 . . ."*

¶ 8 Thomas passed away in September, and Maggie took possession of all assets, including the subject property. The issue in this case is whether strict compliance with the revocation requirement in Trust No. 1 of written notice delivered to the Trustee was required to partially revoke Trust No. 1 as to the subject property, where Thomas was both the sole Grantor and the Trustee, and had executed Trust No. 2 and a General Warranty Deed to transfer the subject property into that new trust.

¶ 9 Oklahoma law states that "[e]very trust shall be revocable by the trustor, unless expressly made irrevocable by the terms of the instrument creating the same." 60 O.S.2001 § 175.41. Here, Trust No. 1 expressly allowed the Grantors to revoke, stating in relevant part:

> The Grantors jointly during their lifetime, and the survivor of them during his or her lifetime, reserve the right at any time, or from time to time, without consent of or notice to any person other than the Trustees, to revoke or modify this Trust in whole or in part, or to change the beneficiaries or assets thereof *by written notice of such revocation, modification, change or withdrawal delivered to the Trustees.*

The sole surviving Grantor and Trustee at the time of the potential revocation was Thomas. The trial court determined Thomas did not revoke Trust No. 1 because he failed to deliver written notice of revocation to the Trustee. The court further found that the General Warranty Deed was insufficient to satisfy the requirement of written notice. However, the trial court's analysis failed to recognize that the only Trustee to whom Thomas would have been required to give written notice was himself.

¶ 10 The Arvidsons contend Thomas could only revoke Trust No. 1 by delivering written notice or including a written revocation in Trust No. 2 or in the General Warranty Deed. Maggie, on the other hand, argues that the requirement of written notice to the

Trustee is only intended to protect the Trustee, and emphasizes that requiring a trustee to prove that he delivered written notice to himself would be absurd. In *Barnette v. McNulty,* 21 Ariz.App. 127, 516 P.2d 583, 586 (1973), the court encountered a similar situation where the settlor was also the trustee. The court stated: "It would be absurd to require the settlor to call himself up on the telephone as trustee and tell himself that he is revoking the trust. *It would be equally absurd to have the settlor send himself a letter as trustee* to inform himself as trustee that the trust is to be terminated." *Id.* (emphasis added). In *Barnette,* the court required some intent to terminate the trust and some communication to the beneficiary or a third party manifesting his decision to revoke. *Id.*

¶ 11 We agree with the Arizona court in *Barnette* that when the grantor and the trustee are the same person, requiring strict compliance with formal delivery of written notice would be unnecessary and absurd. Further, strict compliance with revocation requirements is not always required under Oklahoma law. A similar argument for strict compliance with a method of revocation was rejected by the Oklahoma Supreme Court in *Miller v. Exchange Nat'l Bank of Tulsa,* 1938 OK 135, ¶ 12, 80 P.2d 209, 211. There, the grantor was required to revoke the trust agreement by giving thirty days' written notice to the trustee and paying twenty-five dollars. *Id.,* ¶ 13, 80 P.2d at 211. The evidence was undisputed that the trustee had verbally agreed to waive the thirty-day notice requirement. *Id.,* ¶ 16, 80 P.2d at 211. The Court held the trust beneficiaries could not attack the voluntary waiver of the notice requirement by the trustee, because the written notice requirement was *solely for the trustee's benefit. Id.,* ¶¶ 17–18, 80 P.2d at 211. The Court emphasized that the notice requirement did not benefit the beneficiaries in any way, because the grantor had the absolute power to revoke and did not need the consent of the beneficiaries or even the trustee. *Id.; see also St. Louis Union Trust Co. v. Dudley,* 162 S.W.2d 290, 295 (Mo.App. 1942) (only purpose of notice in writing is to provide evidence of intent to revoke, and

trustee could waive notice because there was no requirement that the notice be preserved or filed or that any beneficiaries be informed of the notice).

¶ 12 Because Thomas was both the Grantor and the Settlor, we will not impose a technical requirement that he deliver written notice to himself. Obviously, the act of delivering written notice would have no effect other than providing evidence of Thomas' intent because Thomas had actual knowledge of his actions, and there was no one else to whom he needed to give notice or obtain consent from before he could revoke the Trust. Our holding is also consistent with Oklahoma law regarding waiver of notice requirements by trustees.

¶ 13 Based on the stipulated findings of fact in the trial court's judgment, Thomas at least revoked Trust No. 1 as to the subject property by his acts of creating Trust No. 2 and deeding the subject property into that Trust. When Trust No. 2 and the General Warranty Deed are considered together, there is no other possible explanation for Thomas' actions except to create a new trust that at least included the subject property. His acts of creating a conflicting trust that was meant to include all of his property and then specifically conveying the subject property to that Trust by General Warranty Deed is clear evidence of his intent to revoke Trust No. 1 as to that property.

¶ 14 When Thomas revoked Trust No. 1 as to the subject property, the title automatically reverted to him. *E.g., Merchants Nat'l Bank of Mobile v. Cowley,* 265 Ala. 125, 89 So.2d 616, 623 (1956) (quoting 89 C.J.S., Trusts, § 88, p. 908 & Restatement, Trusts, § 345, Comment a, p. 1070). At that point, Thomas was free to convey the property into Trust No. 2.[1] Further, he could revoke the old trust and create the new one without having the property reconveyed to him. *Cowley,* 89 So.2d at 623 (quoting Restatement, Trusts, § 330, comment i, p. 993).

¶ 15 Thomas had the authority to revoke Trust No. 1 as the sole Grantor, and no separate written notice was required because he was also the sole Trustee. He exercised this revocation by creating Trust No. 2 and then executing the General Warranty Deed. At that time, he regained title to the property and successfully conveyed it to Trust No. 2. The trial court erred as a matter of law when it determined Thomas Stewart did not have the authority to convey the real property by General Warranty Deed to Trust No. 2. This Deed was valid, and the subject property became the corpus of Trust No. 2. We reverse and remand this case to the trial court for any additional proceedings necessitated hereby.

¶ 16 REVERSED AND REMANDED.

ADAMS, P.J., and JOPLIN, J. (sitting by designation), concur.

---

1. Because he was married to Maggie Stewart, her name was also on the title as his wife.