Sandra CLEM, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. M–83–188.

Court of Criminal Appeals of Oklahoma.

June 10, 1985.

Rehearing Denied July 3, 1985.

Stephen Jones, David Luther Woodward, Jones, Gungoll, Jackson, Collins & Dodd, Enid, for appellant.

Michael C. Turpen, Atty. Gen. of Oklahoma, Alan B. Foster, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

The appellant, Sandra Clem, was found in direct contempt of court, 21 O.S.1981, § 565, by the Honorable R.W. Collier, Associate District Judge of Dewey County. We affirm the Court's order.

On November 23, 1982, the Honorable Joe Young, District Judge, ordered a grand jury in Case No. C–82–230, convened to investigate thefts of oil and oil field equipment in Dewey County. The grand jury was convened at the request of District Attorney L. Jack Barton.

The grand jury subpoenaed appellant, an employee of a company under investigation. On February 14, 1983, the appellant appeared before the grand jury and exercised her Fifth Amendment privilege against self-incrimination. The appellant was taken before Judge Collier, who employed the test set out in *Layman v. Webb*, 350 P.2d 323, 331 (Okl.Cr.1960), to determine if the privilege was rightfully invoked. When the court determined the privilege was properly invoked as to some questions, the State offered, and the court granted, appellant immunity. Appellant was ordered to testify before the grand jury. Appellant was again brought before the grand jury and persisted in her refusal to answer questions. She was brought before Judge Collier a second time and held in contempt of Court. Judge Collier ordered she spend 10 days in the county jail, or until such time as she would comply with the court's order to testify.

### I.

In her first assignment of error, the appellant contends the test set out in *Layman v. Webb, supra,* is unconstitutional. We find that this issue is moot.

The appellant here was given immunity by the court, and ordered to testify before the grand jury. The order of contempt,

therefore, resulted from her refusal to testify after a grant of immunity, not from the method in which the Court decided the validity of her self-incrimination claim.

## II.

■ Appellant next asserts that her refusal to testify before the grand jury was not direct contempt, but, if anything, indirect contempt. We disagree.

To accept appellant's claim would require this Court to overrule twenty-four years of precedent. *See Padgett v. Graham*, 516 P.2d 1375, 1376 (Okl.Cr.1973); *Layman v. Webb*, 350 P.2d at 330 (Okl.Cr.1960). Appellant has presented no compelling reason for this Court to change this holding, especially since a clear majority of jurisdictions also regard such a refusal as direct contempt of court. *See Annot.* 69 A.L.R.3d 501, 516 (1976). This argument is rejected.

## III.

Appellant next contends that the grand jury was improperly impaneled, and was acting *ultra vires*. Appellant contends as such she had no obligation to answer questions before it and could not be punished by contempt for refusal to do so.

Appellant rests her argument on two claims. *First*, she contends that this grand jury was a "hold-over" grand jury, which unlawfully acted beyond its statutory term. *Second*, she argues the jury was unconstitutionally impaneled, as the jury was convened at the request of the District Attorney. We reject both arguments.

### A.

Appellant draws support for the first assertion from her interpretation of two statutes. She maintains that on the basis of 38 O.S.1981, § 18(A), as amended in 1974, and 22 O.S.1981, § 330, as amended in 1961, "the session for jurors cannot exceed the year for which they are selected for service." Brief of Appellant, 31.

Section 330 of Title 22 states:

On the completion of the business before the grand jury, or completion of the stat-utory time limit for sessions of a grand jury, or whenever the court shall be of the opinion that the public interests will not be subserved by further continuance of the session, the grand jury must be discharged....

Section 18(A) of Title 38 provides:

A. Between the tenth and twenty-fifth day of November of each year, the sheriff or one of his deputies, the secretary of the county election board or one of his deputies, and the court clerk or one of his deputies, shall meet at the courthouse of the county they serve in the office of the court clerk and select from the list of qualified jurors of such county, as prescribed by this chapter, all qualified jurors for service in the district court in such county for the ensuing year in the manner hereinafter provided.

■ The appellant argues that the "statutory time limit" noted in Section 330 is limited, under Section 18(A), to one calendar year. Thus, she argues, the grand jury impaneled on December 13, 1982, expired on December 31, 1982.

We reject this argument for two reasons. We first note that the "statutory time limit" suggested by Section 330 refers to the six month terms of court found in 20 O.S. 1961, § 95. This provision was repealed by the Legislature in 1969.

Secondly, we note that the provisions of Section 18(A) set forth only the manner in which grand and petit jurors will be selected. We do not believe the Legislature ever intended this section to serve as a time limit on sessions of the grand jury; it was intended only as a ministerial procedure to select jurors for the coming year.

Our conclusion is strengthened by language in 38 O.S.1981, § 21, which does limit service of petit jurors, but is silent regarding grand jurors. When a claim similar to appellant's was raised in Arizona, the Court of Appeals there held:

The statutory provision [regarding length of jury service] pertaining to trial juries is also still with us. A.R.S. section

21–311. By express terms it pertains to '[a] trial jury.' *There appears to be no comparable requirement as to a grand jury.* Other sections in this article of our revised code pertain to both trial and grand juries, i.e., the succeeding section A.R.S. section 21–213 pertains to ' * * * a grand or trial jury * * *.' *The singling out of a trial jury for this requirement of A.R.S. section 21–311 leads us to the conclusion that it is the legislative intent to leave the matter of the length of service of a grand jury to the discretion of the court impaneling it. This court conceives it to be possible that in some instances a grand jury investigation may necessarily require more than four months to complete, and that the legislature may have had this in mind in not setting specific limits on grand jury sessions.*

*State v. Superior Court in and for County of Pima,* 4 Ariz.App. 373, 420 P.2d 945, 953 (1966). (Emphasis added)

The length of the grand jury's term is limited only to "the completion of [its] business", or the order of the Court based on the public interest. 22 O.S.1981, § 330. We believe the "statutory time limit" in Section 330 became a nullity with the repeal of 20 O.S.1961, § 95.

### B.

 The second challenge to the grand jury stems from the fact it was convened at the request of the District Attorney, an officer or entity not enumerated by the terms of OKLA. CONST., art. 2, § 18 as empowered to convene a grand jury.

It is clear that if the District Attorney had convened the grand jury, that action would have been unlawful. But the grand jury here was not convened by the District Attorney; it was convened by the District Judge, at the District Attorney's request, pursuant to the Court's authority under our State constitution. We can find nothing in our constitution, statutes or case law which precludes a District Attorney from making such a request. In fact, as the State correctly notes, "[l]ogically, it would stretch the imagination to boundless ends to consider that the Court or judge would simply ·order a grand jury on 'his own motion' without some knowledge or information, from whatever source, that such action was necessary and a proper request that he utilize his authority." Brief of Appellee, 14–15.

### IV.

 Finally, the appellant asserts that the Court's grant of immunity was not proper, and thus it was not contemptable for her to continue to assert her Fifth Amendment privilege. She apparently contends that because Oklahoma grants "transactional" immunity,[1] and the federal government confers "use" or "derivative use" immunity,[2] the immunity conferred by the court provided insufficient protection against prosecution by federal authorities. We find this argument meritless.

The United States Supreme Court has held that a grant of immunity by a State court prohibits federal authorities from using that testimony, or any evidence obtained therefrom, in a subsequent prosecution against the witness. *Murphy v. Waterfront Commission of New York Harbor,* 378 U.S. 52, 79, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678 (1964). The United States Supreme Court in *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) held that use and derivative use immunity provides sufficient protection of the privilege against self-incrimination.

---

1. Transactional immunity protects the individual from prosecution for any activity mentioned in the immunized testimony. *See* OKLA. CONST. art. 2, § 27.

2. Unlike transactional immunity, use and derivative use immunity does not bar prosecution, but forbids the admission of any testimony that is specifically immunized, and any evidence derived therefrom, in a federal prosecution. *See* 18 U.S.C.A., § 6002.

Transactional immunity, which accords full immunity from prosecution for the offense to which the compelled testimony relates, affords the witness considerably broader protection than does the Fifth Amendment privilege. *The privilege has never been construed to mean that one who invokes it cannot subsequently be prosecuted. Its sole concern is to afford protection against being 'forced to give testimony leading to the infliction of 'penalties affixed to ... criminal acts.' Immunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom, affords this protection.* It prohibits the prosecutorial authorities from using the compelled testimony in *any* respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness. (Emphasis added).

*Id.* at 453; 92 S.Ct. at 1661.

It has been consistently held that testimony may properly be compelled from a witness in State proceedings regardless of the Fifth Amendment privilege, if there is immunity from federal and State *use* of the compelled testimony in any subsequent prosecution of the Witness. *See Gardner v. Broderick,* 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); *Murphy v. Waterfront Commission of New York Harbor, supra; United States v. Anzalone,* 555 F.2d 317 (2d Cir.1927). *See also, In Re Parker,* 411 F.2d 1067 (10th Cir.1969); *Rowe v. Griffin,* 497 F.Supp. 610 (D.C.Ala. 1980), aff'd 676 F.2d 524 (11th Cir.1982); *United States v. Mena,* 662 F.2d 532 (9th Cir.1981).

The grant of immunity here afforded the appellant all the applicable protections available in the federal courts. We reject this argument.

Appellant's request for oral argument is DENIED. The judgment and sentence is AFFIRMED.

PARKS, P.J., and BUSSEY, J., concur.