2002 OK CR 28

**STATE of Oklahoma, Appellant,**

v.

**Kevin L. BEZDICEK, Appellee.**

**No. SR–2001–401.**

Court of Criminal Appeals of Oklahoma.

July 15, 2002.

### ACCELERATED DOCKET ORDER

¶ 1 The State of Oklahoma, Appellant, has appealed to this Court from an order of the District Court of Garfield County sustaining a magistrate's ruling which granted Appellee's motion to suppress evidence in Case No. CF–2000–619. In that case, the State filed an Information charging Appellee with the crime of Intercepting Oral Communication By an Electronic Device. The Information alleged that on or about April 27, 2000, Appellee intercepted a telephonic conversation between Lynn Dunson and Tara Garrison by means of a hand-held scanner.

¶ 2 On January 18, 2001, Appellee filed in the District Court a pleading entitled *Motion to Quash the Information, the Arrest and to Suppress Any Evidence Obtained Pursuant to Multicounty Grand Jury Subpoenas to Dismiss, and Memorandum Brief.* The State filed a reply to the motion. On March 8, 2001, a hearing on Appellee's motion to quash, suppress and dismiss was held before the Honorable J. Bruce Harvey, Special Judge. After hearing arguments, Judge Harvey found that the multicounty grand jury subpoena numbered MCGJ 99–1207 was improperly issued pursuant to 22 O.S.1991, §§ 351 *et seq.* and other relevant statutes. Judge Harvey ordered that all evidence obtained either directly or indirectly as a result of that subpoena be suppressed.

¶ 3 The State filed an application to appeal from the adverse ruling of the magistrate, pursuant to 22 O.S.1991, § 1089.1 *et seq.,* and the matter was assigned to the Honorable N. Vinson Barefoot, Associate District Judge, as reviewing judge. After hearing arguments, Judge Barefoot took the matter under advisement and later sustained the magistrate's ruling. The State then brought this appeal. Pursuant to Rule 11.2(A)(5), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2001), the appeal was automatically assigned to the Accelerated Docket of this Court. The issues were presented to this Court in oral argument on January 10, 2002, pursuant to Rule 11.2(F). At the conclusion of oral argument, this Court took the matter under advisement. Both parties have also filed supplemental briefs with leave of this Court.

¶ 4 We find resolution of the State's Proposition Two to be dispositive of the case. As stated, Judge Harvey granted Appellee's motion to suppress, and Judge Barefoot sustained that ruling, finding that the grand jury subpoena was not authorized by the Multicounty Grand Jury Act, 22 O.S.1991, § 350 *et seq.*—specifically, that the case at bar does not meet any of the jurisdictional criteria found in 22 O.S.1991, § 353(B). From a plain reading of those statutes, it is clear why the Judges reached the conclusions they did. The statutes clearly state the purpose of a multicounty grand jury is to investigate "organized crime or public corruption, or both, involving more than one county of the state...." 22 O.S.1991, § 351(A)(2)(a). Appellee's case does not involve organized crime or public corruption, and does not involve more than one county of the state. Moreover, the subject matter jurisdiction of a multicounty grand jury is specifically limited to fourteen listed items, which do not include Appellee's alleged crime of Intercepting Oral Communication by an Electronic Device. 22 O.S.1991, § 353(B)(1)-(14).

¶ 5 However, regardless of what the statutes say, the provisions of the Oklahoma Constitution concerning grand juries are self-executing and require no legislative act to carry them into effect. Furthermore, the Legislature may not, by statutory enactment, alter or limit the powers or attributes of a grand jury as conferred by the Constitution. *See Movants to Quash Multicounty Grand Jury Subpoenas v. Powers,* 1992 OK 142 ¶ 3, 839 P.2d 655, 656. We thus turn to

the constitutional provisions regarding empaneling of a grand jury to determine whether the subpoena was a lawful one.

¶ 6 Article II, Section 18 of the Oklahoma Constitution states in relevant part:

A grand jury shall be composed of twelve (12) persons, any nine (9) of whom concurring may find an indictment or true bill. A grand jury shall be convened upon the order of a district judge upon his own motion; or such grand jury shall be ordered by a district judge upon the filing of a petition therefor signed by qualified electors of the county equal to the number of signatures required to propose legislation by a county by initiative petition as provided in Section 5 of Article V of the Oklahoma Constitution, with the minimum number of required signatures being five hundred (500) and the maximum being five thousand (5,000); and further providing that in any calendar year in which a grand jury has been convened pursuant to a petition therefor, then any subsequent petition filed during the same calendar year shall require double the minimum number of signatures as were required hereunder for the first petition; or such grand jury shall be ordered convened upon the filing of a verified application by the Attorney General of the State of Oklahoma who shall have authority to conduct the grand jury in investigating crimes which are alleged to have been committed in said county or involving multicounty criminal activities; when so assembled such grand jury shall have power to inquire into and return indictments for all character and grades of crime. All other provisions of the Constitution or the laws of this state in conflict with the provisions of this constitutional amendment are hereby expressly repealed....

¶ 7 This Court is vested with exclusive appellate jurisdiction in criminal matters, and is authorized to interpret provisions of the State Constitution in aid thereof. *See* Okl. Const. Art. VII, § 4; 20 O.S.1991, § 40; *State v. Young*, 1999 OK CR 14 ¶ 17, 989 P.2d 949, 953; *Ex parte Strauch*, 80 Okl.Cr. 89, 95, 157 P.2d 201, 205 (1945). Because Appellee's alleged wrongdoing does not involve "multicounty criminal activities," and because the grand jury which subpoenaed the records at issue was not convened in Garfield County where the records were kept, our specific task is to determine whether Okl. Const. Art. II, § 18 authorizes a multicounty grand jury to investigate allegations of wrongdoing which do not involve multicounty criminal activity. We hold that it does not.

¶ 8 When construing a constitutional provision, the intent of the provision's framers and the People who adopted it should, if at all possible, be determined by the plain language of the provision itself. *See Oklahoma Elec. Co-op., Inc. v. Oklahoma Gas and Elec. Co.*, 1999 OK 35 ¶ 7, 982 P.2d 512, 514. Courts should be cognizant of the common law as it pertains to the subject of inquiry. *Harkrider v. Posey*, 2000 OK 94 ¶ 10, 24 P.3d 821, 826; *Public Service Co. of Okl. v. Caddo Elec. Co-op.*, 1970 OK 219, 479 P.2d 572, 574 (Syllabus 1); 12 O.S.1991, § 2; 22 O.S.1991, § 9. If any ambiguity exists, extrinsic materials such as the ballot title that presented the provision or any amendment to the People may be considered a "contemporaneous construction" of the provision itself. *Austin, Nichols & Co. v. Oklahoma County Board of Tax–Roll Corrections*, 1978 OK 65 ¶ 18, 578 P.2d 1200, 1203.

¶ 9 Any interpretation of Section 18 must begin with a reading of the provision as a whole, giving effect to each part through the natural significance of the words used and their grammatical arrangement. *State ex rel. Kerr v. Grand River Dam Authority*, 1945 OK 9 ¶ 19, 154 P.2d 946, 950; *Leach v. State*, 17 Okl.Cr. 322, 334, 188 P. 118, 122 (1920). Section 18 provides that a grand jury may be convened in three ways: (1) on the motion of a judge of the district court; (2) upon petition of a requisite number of "qualified electors of the county"; and (3) upon application of the Attorney General. The Attorney General is granted the authority to convene a grand jury to investigate (1) "crimes which are alleged to have been committed in said county," as well as (2) matters "involving multicounty criminal activities."

¶ 10 The grand jury is deeply rooted in our common-law heritage; its ancient origins are "lost in obscurity." *Blake v. State,* 54 Okl. Cr. 62, 66, 14 P.2d 240, 242 (1932).[1] At common law, grand juries were composed of residents of a particular county and charged with investigating matters in that particular county. 4 Blackstone, *Commentaries on the Law of England* § 303 ("The grand jury are sworn to inquire only for the body of the county, *pro corpore comitatus;* and therefore they cannot regularly inquire of a fact done out of that county for which they are sworn, unless particularly enabled by an act of parliament"); *quoted in Bennett v. District Court of Tulsa County,* 81 Okl.Cr. 351, 370–71, 162 P.2d 561, 569 (1945); *see generally* 38 Am.Jur.2d *Grand Jury* § 4 at 829. The parallels between the local scope of the grand jury's inquiry, and the concept of drawing the petit jury from the vicinage of the offense, make sense because the grand jury's original functions included not only presenting the accusation, but trying the accused as well. *Ex parte Bain,* 121 U.S. 1, 10–11, 7 S.Ct. 781, 786, 30 L.Ed. 849; 38A C.J.S. *Grand Juries* § 4 at 335.

¶ 11 When read as a whole, Art. II, § 18 is consistent with this common-law tradition. As noted, the first two methods of convening a grand jury adhere to the notion of localized initiative, whether by a judge of the district court acting *sua sponte,* or by a petition of qualified electors "of the county." The text granting such authority to the Attorney General was adopted by the People on December 7, 1971, while the other two methods existed, in substantially the same form, since the initial adoption of Section 18. The choice and placement of language used in the provision are instructive. Section 18 authorizes the Attorney General to convene a grand jury to investigate matters "in said county" or "involving multicounty criminal activities"—with the term "said county" finding its antecedent in the clause describing the empaneling of a grand jury by initiative petition, signed by a requisite number of qualified electors "of the county."

 ¶ 12 Absent any clear direction to the contrary, we are bound to construe the term "said county" in light of its commonly-understood meaning, and consistently with other uses of the word "county" in the same provision. *See Matter of Edwards Irrevocable Trust,* 1998 OK CIV APP 144 ¶ 12, 966 P.2d 810, 814; *State v. Barnett,* 60 Okl.Cr. 355, 69 P.2d 77, 85 (1936). We hold that the term "said county," as used in Okl. Const. art. II, § 18, authorizes the Attorney General to convene a grand jury in any county of the State, for the purpose of investigating any wrongdoing in that particular county and none other.

¶ 13 Similarly, we find that the term "multicounty criminal activities," as used in Section 18, means exactly what it says: criminal activities which affect more than one county.[2] The Multicounty Grand Jury Act prescribes a procedure for the Attorney General to initiate a grand jury for this particular purpose, including designation of the counties affected, and selection of grand jurors from several counties. 22 O.S.1991, § 359. These provisions are consistent with, and necessary for the implementation of, the language of Section 18 authorizing the Attorney General to convene a grand jury to investigate "multicounty criminal activities." The jurisdiction of the multicounty grand jury shall be over those counties as set out in the Order of the Supreme Court. 22 O.S.2001, § 351, 353.

 ¶ 14 As noted, insofar as the Multicounty Grand Jury Act attempts to limit a multicounty grand jury's inquiry to specific *kinds* of offenses, it contravenes Section 18. *See Movants,* 1992 OK 142 ¶ 3, 839 P.2d at 656. However, just as the Act cannot limit constitutionally-based authority, neither can it expand it. Nothing in Section 18 gives a grand jury, empaneled for the specific pur-

---

1. "Some have thought the institution existed among the early Athenians; others that it is of Norman origin, brought to England by the Normans. Still others claim its origin as Anglo Saxon. The institution came to this country as a part of the common law." *Id.See also* Cantor, *Imagining the Law* 58 (1997) ("The grand jury was certainly not a new idea when Henry II mandated its use in the 1160s and 1170s").

2. The principal definition of the prefix *multi* is "having, consisting of, or affecting many." *Webster's New World Dictionary* (2nd ed.1986).

pose of investigating "multicounty criminal activities," the authority to investigate activities *isolated to a single county.* Nor does the Act purport to grant such authority. The Act recognizes that a multicounty grand jury has some jurisdictional limits. *See* 22 O.S. 1991, § 358(B) ("If a multicounty grand jury, pursuant to its investigation, learns of an offense for which it lacks jurisdiction to indict, [it] shall direct the Attorney General to inform the appropriate prosecutorial authority").

¶ 15 Even if the text of Section 18 were ambiguous on this point, we do not believe the ballot title, which presented the 1971 amendment to a vote of the People, materially assists in resolving the issue. The ballot title of State Question No. 483, Legislative Referendum No. 189 asked voters if the Attorney General should be allowed to convene and conduct grand juries "to investigate crimes alleged to have been committed in *one county* [as opposed to 'said county'] or involving multi-county criminal activities." Like the provision itself, the ballot title first refers to the convening of a grand jury by qualified electors of "a county"—consistent with both the common law and prior versions of the provision.

■ ¶ 16 Furthermore, the legislative history of the ballot title indicates that the purpose of the amendment was to permit the Attorney General to convene a grand jury to investigate multicounty criminal activity—not to use a multicounty grand jury to investigate criminal activity in a single county. *See* S.J.Res. No. 23, Laws 1971, p. 1011–12.[3] In short, these contemporaneous constructions

of Section 18 are neither clearer than, nor clearly contrary to, the terminology used in the constitutional provision itself.[4] Supplementary materials may illuminate ambiguous terms in the provision, but cannot direct an interpretation contrary to the one plainly expressed therein. *Cf. Caminetti v. United States,* 242 U.S. 470, 490, 37 S.Ct. 192, 196, 61 L.Ed. 442 (1917).

¶ 17 Moreover, making the language of Section 18 subservient to the language of the ballot title would create serious problems of its own. The ballot title omits any reference to the district court's authority to empanel a grand jury *sua sponte,* even though that authority has been authorized by our Constitution since statehood. Although the ballot title does not explicitly propose to delete this clause, if the ballot title is construed as more authoritative than the provision itself, the district court's long-recognized power to convene a grand jury would evaporate.

¶ 18 The State's contention in this appeal is that once empaneled, a so-called "multicounty" grand jury (*i.e.* one originally empaneled to investigate "multicounty criminal activities") has authority to investigate matters in *any other single county* of the State, regardless of whether they conceivably affect any *other* county of the State. Such an extreme departure from the common law could only be condoned if the plain and unambiguous language of Section 18 demanded it. The State's construction would render the term "*said* county" meaningless, and the term "*multicounty* criminal activities" superfluous.[5]

---

3. This makes sense, in that investigations into single-county activity may be initiated by the district judge presiding over that county, or by a number of qualified electors of that county. Okl. Const. Art. II, § 18. Further, nothing prohibits the district attorney with jurisdiction over that county from requesting that the district judge convene a grand jury. *Clem v. State,* 1985 OK CR 66 ¶ 17, 701 P.2d 770, 773.

4. The Joint Resolution announced by the Legislature directs the Secretary of State to prepare a State Question "providing for convening a grand jury on order of district judge upon his own motion, upon petition of qualified electors, or upon application of the Attorney General." As framed by the Joint Resolution, the ballot title limits the Attorney General's authority in conven-

ing a grand jury to the investigation of "*multicounty criminal activities*" *only*—with no reference to single-county investigations of any kind. *Id.*

5. The final clause of the second sentence of § 18 states, "when so assembled such grand jury shall have power to inquire into and return indictments for all character and grades of crime" (emphasis added). While this text follows the clause giving the Attorney General authority to summon a grand jury, it appears to refer to the entire sentence, *i.e.* to confer such authority upon any grand jury, whether convened by a district judge, initiative petition, or the Attorney General. This conclusion is supported by the fact that the clause existed in prior versions of § 18. Furthermore, construing this clause as granting *any*

¶ 19 We hold that Art. II, § 18 of the Oklahoma Constitution does not authorize a multicounty grand jury to investigate allegations of criminal activity that are isolated to a single county of the State.

¶ 20 **IT IS THEREFORE THE ORDER OF THIS COURT** that the order of the District Court of Garfield County sustaining Appellee's motion to suppress evidence in Case No. CF–2000–619 should be, and is hereby, **AFFIRMED.**

¶ 21 **IT IS SO ORDERED.**

¶ 22 **WITNESS OUR HANDS AND THE SEAL OF THIS COURT** this 15th day of July, 2002.

/s/Gary L. Lumpkin
GARY L. LUMPKIN, Presiding Judge dissents
/s/Charles A. Johnson
CHARLES A. JOHNSON, Vice Presiding Judge
/s/Charles S. Chapel
CHARLES S. CHAPEL, Judge
/s/Reta M. Strubhar
RETA M. STRUBHAR, Judge
/s/Steve Lile
STEVE LILE, Judge dissents

LUMPKIN, Presiding Judge, dissents.

¶ 1 The Oklahoma Constitution provides for only two types of grand juries: 1) a county grand jury to investigate crimes alleged to have been committed in one county and convened upon the order of the district judge upon his own motion, or ordered by the district judge upon the filing of a petition signed by a qualified number of electors of the county; and 2) a multi-county grand jury to investigate multi-county criminal activities convened by the Oklahoma State Supreme Court upon the filing of a verified application by the Attorney General. Okl. Const. Art. II, § 18; 22 O.S.2001, § 351.[1] The majority opinion creates a third kind of grand jury, one in which the Attorney General can go to any district judge of any county and request the convening of a grand jury. To arrive at this conclusion, the majority goes through a grammatical analysis of Article II, § 18 which is at best confusing, and in the least, unnecessary.

¶ 2 The majority opinion spends a good deal of time trying to decide the meaning of the term "said county" as set forth in § 18. Contrary to the opinion of the majority, the ballot title which presented the 1971 amendment to a vote of the people of the State is a useful tool of interpretation.[2] *Austin, Nichols & Co., Inc. v. Oklahoma County Bd. of Tax–Roll Corrections,* 578 P.2d 1200, 1203 (Okl.1978) (the ballot title is a contemporaneous construction of the constitutional amendment and as such weighs heavily in determining its meaning).

¶ 3 The ballot title substituted the phrase "said county" with the phrase "one county". Pursuant to 34 O.S.1991, § 9, the legal term "said" as set forth in the body of the proposed constitutional amendment was replaced by the more commonly used term "one" in the ballot title.[3] Therefore, using the ballot title as our guide to interpretation, "one county" as used in the ballot title is synonymous with "said county" as used in the text of § 18.

¶ 4 Further support for this proposition can be found in the fact that the people of

---

grand jury convened by the Attorney General (multicounty or single-county) the exclusive authority to investigate *any* crime *anywhere* in the State would, again, render the term "multicounty criminal activities" superfluous.

1. This case is predicated on the State obtaining commercial, business records, *i.e.,* cellular phone logs. *See* 12 O.S.2001, § 2803(6). Appellee had little, if any, expectation of privacy in the records. *See Smith v. Maryland,* 442 U.S. 735, 743–46, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). Instead of addressing the issue of whether Appellee actually had the standing to object to the records, the Court ventures into the arena of constitutional interpretation.

2. See Appendix A

3. A ballot title is to be prepared according to certain specifications. These include that it shall explain in basic words, which can be easily found in dictionaries of general usage, the effect of the proposition; it shall be written on the eighth-grade reading comprehension level; and it shall not contain any words which have a special meaning for a particular profession or trade not commonly known to the citizens of this state. *See* 34 O.S.1991, § 9(B)

the State of Oklahoma voted in favor of State Question No. 483, on December 7, 1971, on the basis that it provided for a new constitutional amendment authorizing the convening of a grand jury to investigate crime occurring in one county or more than one county, *i.e.* multi-county criminal activities. The electorate did not engage in the grammatical analysis utilized by this Court to determine whether "one county" was supposed to mean only the county in which the grand jury sat or another county. They just voted on the amendment based upon what it plainly said.

¶ 5 As the people of the State of Oklahoma voted, pursuant to the provisions of Article II, Section 18, of the Oklahoma Constitution, a multi-county grand jury, once empaneled and acting as a state-wide grand jury, has the power and authority to investigate and return indictments for all character and grades of crimes in one county or in any and all seventy-seven counties of the State of Oklahoma. Such power and authority clearly authorized the issuance of the subpoenas in this case.[4]

¶ 6 Further, I dissent to the majority's conclusion that the Attorney General has the authority to convene a multi-county grand jury. The Oklahoma State Supreme Court was given sole authority to convene a multi-county grand jury pursuant to 22 O.S.2001, § 351. The Attorney General must file a verified application with the State Supreme Court seeking the convening of a multi-county grand jury. Such application must be approved by the Supreme Court who determines whether or not to issue the order convening the multi-county grand jury.

¶ 7 The majority's interpretation of § 18 is in direct conflict with the provisions of the Multi-County Grand Jury Act, 22 O.S.2001, § 350 *et. seq.* The Court's responsibility is to interpret statutes and constitutional provisions to give effect to both in consistent interpretation of the applicable provisions. *See Lozoya v. State,* 932 P.2d 22, 28 (Okl.Cr. 1996). "Legislative acts are to be construed so as to reconcile their provisions, rendering

them consistent and giving intelligent effect to each." *State v. Ramsey,* 868 P.2d 709, 711 (Okl.Cr.1993). *See also Eason Oil Co. v. Corporation Commission,* 535 P.2d 283, 286 (Okl.1975). "Every presumption must be indulged in favor of the constitutionality of an act of the Legislature, and it is the duty of the courts, whenever possible, to harmonize acts of the Legislature with the Constitution." *State v. Pratt,* 816 P.2d 1149, 1151 (Okl.Cr.1991).

¶ 8 In *Modisett v. Marmaduke,* 394 P.2d 541, 543-544 (Okl.Cr.1964) this Court was called upon to reconcile two conflicting statutes. Judge Nix stated in part:

However, your writer has found difficulty in interpreting the law only in such cases where an effort is made to read something into a statute that isn't there; or they try to embrace some act or conduct not clearly included therein. Less confusion would exist in the law if those charged with the responsibility of its interpretation would avoid being a self-proclaimed legislator in an effort to expand a statute to encompass that which would suit his convenience or to include an offense to fit his particular fancy. If statutes were construed strictly and in conformity with what they actually say, Legislative intent could be more easily established and perplexity and confusion in the law eliminated.

394 P.2d at 543-544.

¶ 9 In the majority opinion, the Court has attempted to impose personal philosophical beliefs onto the people of the State of Oklahoma, even though the people of the State have spoken otherwise. I find the majority's opinion an attempt to fit a size 12 foot into a size 6 shoe. While I may not personally agree with granting the Attorney General such broad investigative powers, I find the will of the people of the State of Oklahoma, as set forth in Article II, § 18 of the Oklahoma Constitution, to be the final say on the matter. Accordingly, I dissent to the majority opinion.

4. While I philosophically agree with the Court's desire to limit the nature and scope of the Multi-County Grand Jury Act, I cannot find a logical, legal basis to do so. The provisions of the Multi-County Grand Jury Act, enacted by the Okla-homa Legislature, are consistent with Article II, § 18. The Court's selective reading of the constitutional provisions and the Multi-County Grand Jury Act creates an inconsistency, and not a reconciliation, in both provisions.

¶ 10 I am authorized to state Judge LILE joins in this separate vote.

## APPENDIX A

STATE QUESTION NO. 483 LEGISLATIVE REFERENDUM NO. 189

Submitted by Senate Joint Resolution No. 23, page 1011, Session Laws 1971.
The gist of the proposition is as follows:

Shall a constitutional amendment amending Article II, Section 18, of the Constitution of the State of Oklahoma to provide for composition of grand juries: providing that grand juries be convened upon the filing of a petition signed by the qualified electors of a county; establishing numerical signature requirements for the sufficiency of such petitions; allowing the Attorney General to convene and conduct grand juries, upon the filing of a verified application to investigate crimes alleged to have been committed in one county or involving multi-county criminal activities; granting such grand juries power to indict for all character and grades of crimes, be approved by the people?

Vote——Yes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .142,436
 No . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74,736
AMENDMENT ADOPTED

*Oklahoma Elections: Statehood to Present Volume I*, A Publication of the Oklahoma State Election Board, January 1994, pg. C–513.