185 P.3d 388 (2008)
2008 OK CR 16
M.A.W., Appellant
v.
The STATE of Oklahoma, Appellee.
No. J-2007-955.
Court of Criminal Appeals of Oklahoma.
May 20, 2008.
*389 Mark Bailey, Erin Maxwell, Assistant Public Defenders, Oklahoma City, OK, attorneys for defendant at trial.
Jennifer E. Chance, Assistant District Attorney, Oklahoma City, OK, attorney for State/appellee at trial and on appeal.
Benjamin C. Brown, James Hughes, Erin Maxwell, Assistant Public Defenders, Oklahoma City, OK, attorneys for appellant on appeal.

OPINION
A. JOHNSON, Judge.
¶ 1 M.A.W. appeals an order entered by the Honorable D. Fred Doak, Special Judge, finding that he is ineligible to be considered for youthful offender or juvenile status and denying his motions for certification as a youthful offender and as a juvenile in Oklahoma County District Court, Case No. CF-2007-3389. M.A.W. is charged as an adult in that case with First Degree Murder. The alleged crime occurred on or about June 7, 2007, when M.A.W. was 17 years old.[1]

I. INTRODUCTION
¶ 2 In the proceedings below, M.A.W. sought certification to be tried as a youthful offender or a juvenile. Finding that M.A.W. was not eligible for youthful offender or juvenile certification, the district court denied M.A.W.'s motion. At the time, 10 O.S.Supp. 2007, § 7306-2.2(A)(1)(a) provided youthful offender eligibility for persons charged with first degree murder only if they were thirteen or fourteen years of age; and § 7306-2.5(B) specifically excluded seventeen, sixteen, and fifteen-year-olds from the provisions of the Youthful Offender Act and Juvenile Code.
¶ 3 M.A.W. challenges the district court's denial of his request for youthful offender status by raising the following claims:
(1) House Bill 2195, a bill enacted in 2007 revising the Youthful Offender Act provisions that had been recently codified at 10 O.S.Supp.2006, §§ 7306-2.2 and 7306-2.5, is unconstitutional because it was passed in violation of the anti-logrolling and single-subject provisions of Article 5, § 57 of the Oklahoma Constitution;
(2) Senate Bill 1760, a bill enacted in 2006 eliminating youthful offender eligibility for seventeen, sixteen, and fifteen-year-olds charged with first degree murder, was impliedly repealed by the Legislature; and therefore, its provisions were wrongly incorporated into HB 2195's revisions to 10 O.S.Supp.2006, §§ 7306-2.2 and 7306-2.5, revisions that were then codified at 10 O.S. Supp.2007, §§ 7306-2.2 and 7306-2.5;
(3) The provisions of 10 O.S.Supp.2007, §§ 7306-2.2 and 7306-2.5 limiting youthful offender eligibility for persons charged with first degree murder to thirteen and fourteen-year-olds are unconstitutionally overbroad.
¶ 4 For the reasons set out below, we find nothing in M.A.W.'s arguments that persuades us that 10 O.S.2007, §§ 7306-2.2 and 7306-2.5 are unconstitutional. Nor do we find any merit to M.A.W.'s claim that 10 O.S.2007, §§ 7306-2.2 and 7306-2.5 are unconstitutionally overbroad.

II. BACKGROUND
A. Statutory Framework
¶ 5 Title 10 O.S.Supp.2007, §§ 7306-2.2 and 7306-2.5 permit youthful offender certification for individuals charged with first degree murder only if they are thirteen or fourteen years of age. The historical note appended to each of these sections in the 2007 statutory supplement reflects that the text presented there was the result of a revision to 10 O.S.Supp.2006, §§ 7306-2.2 and 7306-2.5 as directed by House Bill (HB) *390 2195 (2007 Okla.Sess.Law Ch. 1, §§ 9-12).[2] The two versions of these two provisions, published at the revised 10 O.S.Supp.2006, §§ 7306-2.2 and 7306-2.5, consisted of the bare text of two separately enacted Senate Bills, SB 1760 (2006 Okla.Sess.Laws Ch. 285)[3] and SB 1765 (2006 Okla.Sess.Laws Ch. 286),[4] both of which were passed during the 2006 legislative session as separate, single-subject enactments. As published in the 2006 Supplement to the Oklahoma Statutes, the two enactments appear contradictory. One of the published texts (the one enacted by SB 1760), permits youthful offender status only for thirteen and fourteen-year-olds, whereas the other (the one enacted by SB 1765), retains the preexisting language from the underlying 2001 statutory codification that permits youthful offender certification for individuals up to age seventeen.
B. State v. Doak, 2007 OK CR 3, 154 P.3d 84
¶ 6 Two days before HB 2195 was approved by the Governor, this Court issued its decision in State v. Doak, 2007 OK CR 3, 154 P.3d 84. Doak dealt with the apparently conflicting texts published in the 2006 Supplement. In Doak, we found that the facially conflicting texts could not be reconciled and held, therefore, that SB 1765 impliedly repealed SB 1760 and its language eliminating youthful offender status for fifteen, sixteen, and seventeen-year-olds because SB 1765 was the later-enacted bill, having been signed into law by the Governor two minutes after SB 1760. Doak, 2007 OK CR 3, ¶ 19, 154 P.3d at 88.

III. DISCUSSION
A. Constitutionality Under Oklahoma Constitution Article 5, § 57
¶ 7 M.A.W. contends that HB 2195 (a bill enacted in 2007 revising the Youthful Offender Act provisions then codified at 10 O.S.Supp.2006, §§ 7306-2.2 and 7306-2.5) is unconstitutional because it was passed in violation of the anti-logrolling and single-subject provisions of Article 5, § 57 of the Oklahoma Constitution. In support of his argument, M.A.W. points out that HB 2195 was over one-hundred pages long and contained sections amending dozens of statutes, including the statutes at issue here. M.A.W. contends, therefore, that the age provisions of SB 1760, denying youthful offender status to those over fourteen, as those provisions were incorporated into HB 2195, violate the single-subject, anti-logrolling provisions of Article 5, § 57, of the Oklahoma Constitution because all of the various statutes amended by HB 2195 are not closely related in either topic or purpose. M.A.W.'s claim raises a question of first impression.
¶ 8 "The purpose of the constitutional requirement that but a single subject be included in a legislative bill is to make impossible by log-rolling devices the enactment of unpopular legislation by including it with popular legislation on an entirely different subject." Bond v. Phelps, 1948 OK 76, ¶ 44, 191 P.2d 938, 950. What HB 2195 did, with respect to 10 O.S.2001, §§ 7306-2.2 and 7306-2.5, was simply to adopt and revive the previously-enacted revisions from SB 1760 and SB 1765 so that the changes approved in those two, separately-enacted, single-subject bills could be incorporated and merged into the revised Oklahoma Statutes codified at 10 O.S.Supp.2007, §§ 7306-2.2 and 7306-2.5. This is a significant distinction under our Constitution.
¶ 9 The Oklahoma Constitution provides:
Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes; and no law shall be revived, *391 amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred, shall be re-enacted and published at length: Provided, That if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the laws as may not be expressed in the title thereof.
Article 5, § 57 (emphasis added). Thus, bills adopting a "revision of statutes" are clearly excluded from the single-subject rule of Article 5, § 57. House Bill 2195 falls squarely into this "revision of statutes" exception. Furthermore, laws may be revived under this provision provided the law is reenacted and published at length.
¶ 10 The structure, title, and text of HB 2195 all confirm that, while it was enacted in 2007, it is a clean-up bill of sorts, designed to amend, merge, consolidate and repeal duplicate sections added to various Oklahoma Statutes during the 2006 legislative session. This type of bill is passed in some form after each legislative session and merges amendments made in separate single-subject bills to the same statute to make one unified statute or section.[5] House Bill 2195's title, for example, cites to, and incorporates by reference, very specific and separately enacted pieces of legislation as the authority for the listed revisions. The title lists Chapter 285 and Chapter 286 from the 2006 Oklahoma Session Laws as authority for the revisions to 10 O.S.Supp.2006, §§ 7306-2.2 and 7306-2.5. In the text, HB 2195 eliminates one of the two enactments by repeal and amends the other to incorporate the changes adopted in the repealed enactment so the two become merged and only one remains. It is clear that the Legislature intended, through HB 2195, only to revise these duplicate bills (originally SB 1760 and SB 1765), which amend the same sections of the Youthful Offender Act in order to merge them and to reconcile any conflicts therein. House Bill 2195 reenacted the amendments adopted during the 2006 legislative session in a consolidated form and published it at length in compliance with Oklahoma's Constitution. Hence, House Bill 2195 is a valid legislative enactment under Article 5, § 57, as a bill adopting a revision of statutes.
B. Implied Repeal of SB 1760
¶ 11 M.A.W. also contends that the district court improperly denied his motions for youthful offender certification by relying on the age criteria of 10 O.S.Supp.2007, §§ 7306-2.2 and 7306-2.5. According to M.A.W., the language of 10 O.S.Supp.2007, §§ 7306-2.2 and 7306-2.5, permitting youthful offender certification for persons charged with first degree murder only if they are thirteen or fourteen years of age, was impliedly repealed by the Legislature during the 2006 legislative session with enactment of SB 1765.
¶ 12 As noted above, Doak found that Senate Bills 1760 and 1765 contained conflicting language and therefore applied the rule of statutory construction known as the latest-enacted rule to conclude that SB 1760 was impliedly repealed by SB 1765 because SB 1765 was the later enacted of the two bills. As noted above, HB 2195 is a valid legislative enactment that did not violate the single-subject rule because it falls within the revision of statutes exception. It revived the changes enacted in SB 1760 that had limited youthful offender status to those thirteen or *392 fourteen years of age (i.e., the language this Court found had been repealed by implication in Doak) by reenacting those amendments and publishing them at length. Such was the law at the time M.A.W. was charged with first degree murder. Accordingly, we find that the district court properly denied M.A.W.'s motion for youthful offender status based on 10 O.S.2007, §§ 7306-2.2 and 7306-2.5.
C. Overbreadth
¶ 13 M.A.W. also claims that the amended versions of sections 7306-2.2 and 7306-2.5, restricting youths over the age of fourteen charged with first degree murder from seeking certification as juveniles and youthful offenders, is unconstitutionally overbroad because it violates the intent of the Youthful Offender Act; vests unlawful discretion in the prosecutor, subjects M.A.W. to cruel and unusual punishment, and denies him due process and equal protection.
¶ 14 The argument advanced by M.A.W. is really no different than arguments addressed by this Court in other cases challenging the constitutionality of Oklahoma's reverse certification statute, where the defendants are unhappy with the State's ability to charge them as adults. See Trolinger v. State, 1987 OK CR 71, ¶¶ 9-10, 736 P.2d 168, 170-71 (upholding constitutionality of reverse certification statute and rejecting equal protection challenge); Jones v. State, 1982 OK CR 196, ¶¶ 6-14, 654 P.2d 1080, 1082-84 (rejecting constitutional challenge that reverse certification statute vested prosecution with "overbreadth of discretion" because State was given power to decide to either proceed in juvenile court or prosecute defendant as adult); State ex rel. Coats v. Rakestraw, 1980 OK CR 24, ¶¶ 2-7, 610 P.2d 256, 258-59 (upholding constitutionality of reverse certification statute and rejecting equal protection challenge).
¶ 15 "The power to define crime and punishment in this State lies with the Legislature." State v. Young, 1999 OK CR 14, ¶ 26, 989 P.2d 949, 955. The Legislature's power to define who may qualify under the Youthful Offender Act and to exclude individuals over certain ages, who are charged with enumerated crimes, does not offend the Constitution. For this reason, M.A.W. had no vested interest in the previous version of the Youthful Offender Act that was repealed and no longer in effect at the time he allegedly committed the crime at issue. Nor is he entitled, simply by virtue of his age, to be considered for youthful offender or juvenile status. The amended version of the Youthful Offender Act that was applied to M.A.W. is constitutional.
¶ 16 Intertwined with his constitutional claim, M.A.W. also argues that the trial court abused its discretion in denying his motions for a certification study/psychological evaluation and for certification as a youthful offender or a juvenile without a hearing on the merits. We have found that the trial court correctly held that M.A.W. was ineligible for youthful offender status as a matter of law based on his age. See 10 O.S.Supp.2007, § 7306-2.2. The trial court did not abuse its discretion in denying his motions.

DECISION
¶ 17 The order of the District Court finding that M.A.W. was not eligible for certification as a youthful offender or a juvenile and denying his motion for such certification is AFFIRMED. Under Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2008), the MANDATE is ORDERED issued upon delivery and filing of this decision.
LUMPKIN, P.J., C. JOHNSON, V.P.J. and LEWIS, J., concur.
CHAPEL, J., dissent.
CHAPEL, J., Dissenting.
¶ 1 I dissent to the Opinion. I believe that H.B. 2195 clearly violates the single-subject rule and is unconstitutional. M.A.W. was subject to the provisions of the Youthful Offender Act which prevented him from requesting certification as a youthful offender.[1] This law was affected by a series of legislative mishaps, concluding with the unconstitutional *393 enactment of H.B. 2195. Before 2006, Section 7306-2.5 of Title 10 provided that a minor of fifteen, sixteen or seventeen years who had committed murder could apply for certification as a youthful offender. In 2006, the Legislature enacted two amendments to this section. One, S.B. 1765, retained that definition as it was.[2] The other, S.B. 1760, provided that such persons should be tried as adults and not subject to the provisions of the Youthful Offender Act. The Governor signed both amendments, creating a clear conflict in the law.
¶ 2 We considered this dilemma in Doak v. State and concluded that the later-signed law controlled.[3] That law, S.B. 1765, retained the previous provision and allowed older teenagers charged with murder to request certification as a youthful offender. It also inserted a separate section defining the term "next friend." At the time Doak was presented to this Court and decided, the parties and this entire Court agreed that the discrepancy in language between S.B. 1760 and S.B. 1765 created a clear conflict of law which had to be resolved. In response to Doak the Legislature in 2007 attempted to amend Section 7306-2.2, adopting the more restrictive version of the law found in S.B. 1760 and stating that the Youthful Offender Act would not apply to teenagers of fifteen, sixteen or seventeen years charged with murder, while keeping the definition of "next friend" introduced by S.B. 1765. However, the Legislature chose not to amend the Act in separate legislation. Instead the amendment was included in an omnibus bill, H.B. 2195.
¶ 3 The majority implies both that H.B. 2195 merely cleans up duplicate legislation, and that it amends the Youthful Offender Act outright. At one point, the majority suggests that H.B. 2195 repealed some of the language of S.B. 1765 and incorporated some language from S.B. 1760, merging the two "duplicate" statutes. [Op. at 391] However, the majority also states that H.B. 2195 "revived the changes enacted in S.B. 1760" which had been repealed by Doak. [Op. at 392] The latter characterization is correct. At the time H.B. 2195 was passed, Doak was the law. The restrictive eligibility language of S.B. 1760 was not in effect, but the definition of "next friend", originally inserted by S.B. 1765, was. Although the text of H.B. 2195 states it repeals S.B. 1760, in fact this had already been repealed by Doak; this provision may have served a legislative housekeeping function but otherwise had no practical meaning. The Youthful Offender Act amendment in H.B. 2195 explicitly superceded Doak by again adopting the more restrictive eligibility language which had failed in S.B. 1760. As the law at the time H.B. 2195 was passed and signed did not contain that restrictive language, and no outstanding amendments existed which included it, there was no duplicate legislation for the Legislature to reconcile. In this instance, and despite its title suggesting it related to duplicate sections, H.B. 2195 amended the relevant provision of the Youthful Offender act on its own authority. That is, this portion of H.B. 2195 simply amends the Youthful Offender Act.
¶ 4 After reviewing all the applicable and persuasive authorities I conclude that H.B. 2195 was unconstitutional as a violation of the single-subject rule. I recognize that in assessing a claim of unconstitutionality, we determine whether the Oklahoma constitution prohibits the Legislature from doing an act, rather than determining whether the act is authorized by the constitution.[4] We strictly construe limitations on legislative power, and presume a Legislative enactment constitutional unless its unconstitutionality is shown beyond a reasonable doubt.[5]
¶ 5 The single-subject rules in Art. 5, §§ 56 and 57 of the Oklahoma constitution *394 are designed to prevent "log-rolling," succinctly described as "including unpopular causes with popular causes on an entirely different subject in the same legislative measure."[6] The single-subject rule also ensures that legislators and voters  citizens  of Oklahoma know the potential effect of legislation.[7] Yet another purpose of the single-subject rule is to prevent lawmakers from including unrelated subjects in legislation in order to defeat the governor's veto power.[8]
¶ 6 I look to decisions of the Oklahoma Supreme Court as persuasive authority. The claim before us is an issue of first impression in that there is no specific decision from either this Court or the Oklahoma Supreme Court discussing the meaning of the clause, "bills adopting a code, digest, or revision of statutes." However, the Oklahoma Supreme Court has regularly interpreted the meaning of the single-subject rule in both Sections 56 and 57. That Court has articulated the test to be used when reviewing a single-subject rule claim, and made clear that the test remains the same for both Section 56 and Section 57. Although the majority does not refer to this body of law or, indeed, any law at all,[9] in its discussion of M.A.W's substantive claim, I believe it is appropriate to consider it when we are faced with such an important issue. In fact, I believe that, lacking any firm guidance from our own cases,[10] the most persuasive authority available is that of our sister Court, interpreting the same constitutional provision which is at issue here.
¶ 7 I first turn to the language of Section 57 itself. Section 57 reads:
Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length: Provided, That if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the laws as may not be expressed in the title thereof.
¶ 8 The majority determines that H.B. 2195 falls under the exception for "revision of statutes." This interpretation of the language above is unreasonable on its face. "When construing a constitutional provision, the intent of the provision's framers and the People who adopted it should, if at all possible, be determined by the plain language of the provision itself."[11] In interpreting a constitutional provision, we look first to see if the wording is plain, clear and unambiguous, and must accept the provision's evident meaning.[12] To avoid rendering a constitutional section superfluous or useless, we give *395 "effect to each part through the natural significance of the words used and their grammatical arrangement."[13] The phrase "revision of statutes" is included in the clause exempting from the single-subject requirement "general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes."[14]
¶ 9 In particular, "revision of statutes" is an inseparable part of the clause, "bills adopting a code, digest, or revision of statutes." In order to give meaning to each phrase in this clause, these phrases must complement one another. A common-sense reading of these phrases, using the ordinary meaning of words, shows their interaction.[15] Any adoption of an entire code of laws, written together and enacted as one, is exempt from the single-subject rule. In the Oklahoma statutory scheme, any given code of laws refers to a particular subject, such as the criminal code, the motor vehicle code, the uniform commercial code, etc. This has been true since laws were adopted in the territorial days, and there is no question that the framers of Oklahoma's constitution were familiar with this practice. The single subject rule will not apply to adoption of a digest of laws which, again following common practice, will focus on a particular subject. Following these unremarkable conclusions, the phrase "revision of laws" must, in this context, refer to a bill which revises an entire set of laws devoted to a particular subject, just as a code or digest would be. To conclude otherwise would render the references to code and digest meaningless, and make those phrases superfluous. Were we to create, as the majority does, an exception for any bill, however large and disconnected in scope, revising any number of statutes, this would swallow the exceptions for adoption of codes and digests. In order to conclude that any bill such as H.B. 2195, which essentially amends a variety of statutes, cannot violate the single subject rule, the majority implicitly equates "amendment" with "revision," rendering both terms meaningless.
¶ 10 I conclude that the phrase "revision of statutes" does not automatically exempt H.B. 2195 from the single-subject rule. I now analyze H.B. 2195, to determine whether it is prohibited by the single-subject rule. The Oklahoma Supreme Court recently reiterated the Oklahoma test for determining whether legislation violates the single-subject rule.[16] That Court has often considered the argument that the rule may be satisfied by broad, expansive themes, and repeatedly rejected it.[17] To pass the single-subject test in Sections 56 and 57, provisions contained within a piece of legislation must be germane, relative, and cognate to a readily apparent common theme and purpose.[18] The "unity-of-subject" germaneness test requires unity of subject in all provisions of the challenged legislation.[19] We look to see whether the lawmaker (a) can make a choice to pass or veto the measure without being misled, and (b) "is forced to choose between two unrelated *396 provisions contained in one measure."[20] In 1948, the Oklahoma Supreme Court reviewed its earlier cases on the single-subject rule, revealing the principle that where an act's title states a subject, and its provisions relate to that subject in some way, then details which provide for different areas of law within the scope of the subject do not violate the rule.[21] In a later case, the Court clearly stated the measure by which it determines germaneness:
[T]he issue is not how similar or "related" any two provisions in a proposed law are, or whether one can articulate some rational connection between the provisions of a proposed law, but whether it appears that either the proposal is misleading or provisions in the proposal are so unrelated that many of those voting on the law would be faced with an unpalatable all-or-nothing choice.[22]
¶ 11 Many of the Oklahoma Supreme Court cases involve legislation which in whole or in part refers to appropriation of funds. However, the Court has held that Section 57 is violated where a bill combines unrelated general legislation subjects.[23] In 2001 that Court used Sections 56 and 57 to strike down an omnibus reconciliation bill, which included appropriation and transfer of funds, agency budgets and personnel matters, amended some laws and included other provisions of law, encompassing budget and non-budgetary topics.[24] In 1991 that Court struck down legislation which discussed space allocation at the State Capitol and relocation of state offices, and authorized the sale of surplus water from Sardis Reservoir.[25]
¶ 12 Looking at H.B. 2195, I ask whether there is any unity of subject in its provisions, and I cannot conclude that there is. We may look to see whether an act's title reflects its general subject matter, and whether the matters in the text are germane to the title.[26] The Act's title is "An Act relating to duplicate sections; amending, merging, consolidating, and repealing duplicate sections; amending 3A O.S.2001, Section 200.1, as last amended by Section 1, Chapter 274, O.S.L. 2006, etc." In fact, the title is merely a repetition of the first few lines of the Act. This is too self-referential and vague to either encompass the subject matter of the Act or to provide material to analyze the title's relation to the Act.
¶ 13 The Oklahoma Supreme Court has suggested that, in determining whether an act embraces more than one subject, a reviewing court should look at the act to see what it covers.[27] Looking at H.B. 2195, I see that it amends or affects sixteen separate titles and four separate chapters within the Oklahoma Statutes. Its topics range through horse racing; guardianship; delinquent children; various agency personnel matters, rules and policies; the jurisdiction of municipal criminal courts of record; sentencing provisions made obligatory under a victims' protection act; court costs and fees; unfair and deceptive insurance practices; divorce and custody issues; Oklahoma identification cards; the purchase of vehicles by state boards, commissions, departments, institutions, officials or employees; and, of course, the Youthful Offender Act.
¶ 14 There are certainly various provisions in this bill, but I can discern no common theme or purpose, either readily manifest (as the test requires) or hidden. It cannot pass the unity-of-subject germaneness test. This Act is exactly what it purports to be  a *397 hodgepodge of provisions affecting a variety of laws encompassing both civil and criminal matters. The Legislature could have passed each one separately. Under Section 57, each group of amendments which related to a single code could have been passed together. However, the Legislature chose to combine all these provisions into a single bill with no connection among its topics. On its face and according to persuasive precedent, H.B. 2195 cannot pass the single-subject test. I would find the law unconstitutional. I would vacate the amendment to Section 7306-2.5, and allow M.A.W. to proceed under the law as it stood after Doak.
NOTES
[1] M.A.W. appealed Judge Doak's order as an order denying reverse certification and the matter was automatically assigned to the Accelerated Docket of this Court under Rule 11.2(A)(1), Rules of the Oklahoma Court of Criminal Appeals, Ch. 18, App. (2008). The State filed a motion to dismiss this appeal the day before oral argument was to be held, contending that the matter was not subject to the statutory provisions that authorize reverse certification appeals. The propositions, issues and motions were presented to this Court in oral argument on December 13, 2007, under Rule 11.2(F). The Court took the matter under advisement.
[2] HB 2195 passed the House of Representatives on February 8, 2007 and passed the Senate on February 21, 2007. The Governor approved HB 2195 on February 22, 2007. See 2007 Okla.Sess. Laws Ch. 1 (HB 2195), available at http://www. oscn.net/applications/oscn/DeliverDocument.asp? CiteID=448567.
[3] 2006 Okla.Sess.Laws Ch. 285 (SB 1760) §§ 1-2, available at http://www.oscn.net/applications/ oscn/DeliverDocument.asp?CiteID=446212.
[4] 2006 Okla.Sess.Laws Ch. 286 (SB 1765) §§ 2, 4, available at http://www.oscn.net/applications/ oscn/DeliverDocument.asp?CiteID=446214.
[5] See, e.g.:

2006 Okla. Sess. Laws Ch. 16, pp. 31-147 (HB 3139  An Act relating to duplicate sections; amending, merging, consolidating, and repealing duplicate sections), available at http://www.oscn. net/applications/oscn/DeliverDocument.asp?Ci teID=445772;
2005 Okla. Sess. Laws Ch. 1, pp. 1-180 (HB 2060  An act relating to duplicate sections; amending, merging, consolidating, and repealing duplicate sections), available at http://www.oscn. net/applications/oscn/DeliverDocument.asp?Ci teID=441677;
2004 Okla. Sess. Laws Ch. 5, pp. 4-144 (HB 2725  An act amending, merging, consolidating and repealing duplicate sections, etc.), available at http://www.oscn.net/applications/oscn/Deliver Document.asp?CiteID=438407; and
2003 Okla. Sess. Laws Ch. 3, pp. 13-154 (HB 1816  An act amending, merging, consolidating, and repealing duplicate sections), available at http://www.oscn.net/applications/oscn/Deliver Document.asp?CiteID=435189.
[1] 10 O.S.Supp.2007, § 7306-2.5(B).
[2] This language read: "(A)(1) "Youthful offender" means a person: (a) thirteen (13), fourteen (14), fifteen (15), sixteen (16) or seventeen (17) years of age who is charged with murder in the first degree and certified as a youthful offender as provided by section 7306-2.5 of this title."
[3] 2007 OK CR 3, 154 P.3d 84, 87.
[4] Fent v. State of Oklahoma, 2008 OK 2, ¶ 14, 184 P.3d 467, quoting Wiseman v. Boren, 1976 OK 2, 545 P.2d 753, 760-61.
[5] Fent, 2008 OK 2 ¶ 14, 184 P.3d 467; Edmondson v. Pearce, 2004 OK 23, 91 P.3d 605, 615.
[6] Fent, 2008 OK 2, ¶ 22, 184 P.3d 467. A separate constitutional provision contains a single-subject rule for amendments to the Oklahoma Constitution. Art. 24, § 1.
[7] In re Initiative Petition No. 382, State Question No. 729, 2006 OK 45, 142 P.3d 400, 405.
[8] Johnson v. Walters, 1991 OK 107, 819 P.2d 694, 697-98.
[9] The majority uses as examples several other omnibus bills which were passed by the Legislature. I am unaware of any constitutional challenge to any of these bills on single-subject grounds. The fact that the Legislature may make a practice of passing "clean-up" bills has no bearing on whether that practice violates the Oklahoma Constitution. As the Oklahoma Supreme Court cases show, the Legislature continues to habitually enact bills of a type which that Court has explicitly declared unconstitutional.
[10] This Court has two cases discussing the phrase "revision of statutes"; neither applies to this question. Green v. State, 33 Okl.Cr. 268, 243 P. 533, and Herndon v. State, 16 Okl.Cr. 586, 185 P. 701, considered claims arising when the new Legislature of the new state of Oklahoma adopted as state laws the codes of law which had previously been in effect in the Territories, including subsequent modifications and additions. In both cases, the Court held that the Legislature's adoption of the Oklahoma Code, including the Criminal Code, did not violate the single subject rule.
[11] State v. Bezdicek, 2002 OK CR 28, 53 P.3d 917, 919.
[12] In re Oklahoma Capitol Imp. Authority, 2003 OK 59, 80 P.3d 109, 113; State ex rel. Ogden v. Hunt, 286 P.2d 1088, 1091 (Okl.1955).
[13] Bezdicek, 53 P.3d at 919. As I note above, this is also a bedrock principle of statutory interpretation. Doak, 154 P.3d at 87; Vilandre v. State, 2005 OK CR 9, 113 P.3d 893, 896; State v. Love, 2004 OK CR 11, 85 P.3d 849, 850; Byrd v. Caswell 2001 OK CR 29, 34 P.3d 647, 648-49.
[14] General appropriation bills are subject to a separate constitutional single-subject rule found in art. 5 Section 56, immediately preceding Section 57.
[15] Riley v. Carter, 165 Okla. 262, 25 P.2d 666, 671 (1933) (constitutional interpretation begins with plain language of the provision).
[16] I note that the majority's interpretation of the phrase "revision of statutes," would by implication reject as invalid much of the Oklahoma Supreme Court case law on this issue.
[17] See, e.g., Fent, 2008 OK 2, ¶ 23, 184 P.3d 467; Campbell v. White, 1993 OK 89, 856 P.2d 255, 258. In adopting the germaneness test, Campbell discussed this test and the opinions of other state courts at length. The single-subject rule is widely recognized, and all the courts which have considered the matter have interpreted the rule using the germaneness test. Enforcing the One-Subject Rule: The Case For a Subject Veto, 38 Hastings L.J. 563, 572 (1987).
[18] Fent, 2008 OK 2, ¶ 23, 184 P.3d 467; In re Initiative Petition No. 382, State Question 729, 142 P.3d at 405; Pearce, 91 P.3d at 628; Campbell, 856 P.2d at 258. This interpretation is of long standing. See, e.g., Bond v. Phelps, 200 Okla. 70, 191 P.2d 938, 946 (1948); Black v. Oklahoma Funding Bond Comm'n, 193 Okla. 1, 140 P.2d 740, 743 (1943).
[19] Fent, 2008 OK 2 ¶ 23, 184 P.3d 467.
[20] In re Initiative Petition No. 382, State Question 729, 142 P.3d at 405.
[21] Bond, 191 P.2d at 947-48.
[22] In re Initiative Petition No. 382, State Question 729, 142 P.3d at 407-08.
[23] Johnson, 819 P.2d at 698. See also Campbell, 856 P.2d at 259 (general legislation bills limited to one subject).
[24] Morgan v. Daxon, 2001 OK 104, 49 P.3d 687, 687.
[25] Johnson, 819 P.2d at 695.
[26] Pearce, 91 P.3d at 628. In 1939, the Oklahoma Supreme Court used Section 57 to strike down a portion of a law assigning a minimum wage to men and boys because it was not included in the act's title with clarity. Associated Industries of Oklahoma v. Industrial Welfare Commission, 185 Okla. 177, 90 P.2d 899, 909-10 (1939).
[27] Bond, 191 P.2d at 946-47.